PORTER AUTO COMPANY, Appellant, v. FIRST NATIONAL BANK OF GILMORE CITY, Appellee.

BANKS AND BANKING: Deposits—Right of Bank to Offset Indebtedness—General Deposit. A bank holding a matured indebtedness due it from a depositor has the right to offset its indebtedness against the balance due the depositor; and where the bank did not know that a deposit was made for the purpose of paying a. check, to be drawn later, to pay for automobiles, the deposit was general, and not special, and the bank had a right to offset its matured indebtedness against such deposit.

*Appeal from Humboldt District Court.*—N. J. LEE, Judge.

MARCH 20, 1919.

ACTION at law to recover the proceeds derived from the sale of an automobile, deposited in defendant bank by a retail dealer, who purchased the same from plaintiff upon a conditional sale contract, providing that title should remain

in the seller until payment of the purchase price. The facts are fully stated in the opinion. The case was transferred, and tried in equity, resulting in the dismissal of plaintiff's petition. It appeals.—*Affirmed.*

*Sylvester Flynn,* and *John Cunningham,* for appellant.

*J. M. Berry* and *Lovrien & Lovrien,* for appellee.

STEVENS, J.—Plaintiff is a copartnership, composed of J. W. Porter, A. A. Smith, and H. W. Paine, and is engaged in the business of selling automobiles at wholesale and retail at Eagle Grove, Iowa. J. A. Rasmussen, at the time of the transaction involved in this litigation, was, and had been for several years, engaged in selling automobiles at retail at Gilmore City, Iowa, under the name of the Gilmore Auto Company.

Prior to the arrangement under which the car in question was delivered to the Auto Company, a bill of lading, with sight draft attached, had been forwarded by plaintiff to defendant with each shipment of automobiles, and, upon payment of the draft, the bill of lading was delivered to the Auto Company. As the result of this arrangement, the Auto Company became indebted to the bank for advances, and the bank, in 1914 or 1915, refused further payment of plaintiff's drafts. Thereupon, plaintiff and Rasmussen, in the name of the Gilmore Auto Company, entered into an arrangement by which the former delivered to the latter automobiles, upon the execution of a note payable on demand, and a conditional sale contract providing that title to the car should remain in plaintiff until payment of the purchase price.

On August 23, 1916, the Gilmore Auto Company purchased a Velie car of plaintiff, for which it executed a conditional sale contract and note for $925, payable on demand. None of the conditional sale contracts were acknowledged or

recorded. The car in question was sold by the Gilmore Auto Company, for which it received in payment a note for $800 and a Ford car. The company sold the Ford car for $200, receiving $25 in cash and a note in its favor for $175. Both notes were discounted at the defendant bank, and $963.30 credited to the account of the Auto Company. Many checks payable to plaintiff were drawn on this account in payment of automobiles and supplies, and paid by defendant. The account shows a continuous series of transactions, including several deposits of small amounts. Numerous checks were also drawn to various parties, and paid by the bank. On September 19th, the date of the deposit·in question, the bank held matured indebtedness of the Auto Company in excess of the balance on deposit therein to its credit, and on this date, charged its account with $929.78, and credited the same upon its past-due note, balancing its account, which was slightly overdrawn before this deposit was entered,—which accounts for the discrepancy in the deposit and the credit entered on the note.

It is conceded that a bank holding matured indebtedness due it from a depositor may offset the same against a balance due such depositor from the bank. The contention of counsel for appellant is that $925 of the amount deposited out of the proceeds of the sale of the notes received by the Gilmore Auto Company, from the purchasers of the Velie and Ford cars, was placed in the bank with its knowledge,—and the case is argued upon this theory,—for the specific purpose of paying a check, to be drawn later, in favor of plaintiff; and that the transaction comes within the rule announced in *Dolph v. Cross,* 153 Iowa 289, and *Smith v. Sanborn State Bank,* 147 Iowa 640. The officers of the bank testified that they knew nothing of the conditional sale contracts, or the terms upon which cars were being sold and delivered by plaintiff to the Gilmore Auto

Company. Concerning notice to the bank, Rasmussen testified:

"I had told Lorenson, cashier, about the carload of cars, at the time the Porter Auto Company took up the sight draft. I do not remember that I went over the arrangements I made. Nothing was said about how I was going to continue to handle cars for the Porter Auto Company. I do not know that I have said anything until after this check (meaning the one in controversy) was turned down. I do not think that I had any conversation with any of the officers of the bank after I made this arrangement. * * * I did not say anything to the bank about the Porter Auto Company having money in the car. I did not disclose to the bank that all I had in them was my commission."

Mr. Smith testified to a conversation with an officer of the bank, in which he claims to have told him that plaintiff was selling cars to the Auto Company upon contract, but did not go into details. This conversation is denied by the bank officer.

It is not claimed that the bank was informed by Rasmussen, at the time the notes were discounted to the bank and the proceeds credited to his account, that the money was deposited for the purpose of paying a check to be drawn in favor of plaintiff, and we find no satisfactory evidence in the record that any of the officers of defendant bank knew the terms upon which plaintiff was selling cars to the Auto Company. One of the members of plaintiff co-partnership testified that it was the understanding between the plaintiff and Rasmussen that he had permission and authority to sell or exchange the cars in any way he saw fit, and pay therefor when sold. It is not claimed that the money was deposited in the bank in pursuance of an agreement between plaintiff and Rasmussen that it was to be used only in payment of checks drawn in favor of the for-

mer, nor did plaintiff undertake in any way to direct the disposition of the money received by the Auto Company from the sale of cars. The proceeds derived therefrom were generally deposited in defendant bank; and if notes were received, instead of cash, they were discounted to the bank, and credit given the Auto Company for the proceeds. Doubtless, Rasmussen intended to forward check to plaintiff in payment for the Velie car purchased and sold by the Auto Company; but the record does not sustain appellant's contention that the money was deposited in defendant bank for the specific purpose of assuring payment thereof, or that the officers of defendant had knowledge of such intention upon his part, or of the manner in which the business between plaintiff and the Auto Company was conducted. The deposit was general, and not special, and the bank did not hold it in trust for plaintiff, and therefore had a right to offset its matured indebtedness against the balance due the Auto Company from the bank. *Smith v. Des Moines Nat. Bank,* 107 Iowa 620; *Smith v. Crawford County St. Bank,* 99 Iowa 282; *Kimmel v. Bean,* 68 Kan. 598 (75 Pac. 1118); *Cunningham v. Bank of Nampa,* 13 Idaho 167 (88 Pac. 975).

The facts in the case at bar clearly distinguish it from *Dolph v. Cross* and *Smith v. Sanborn State Bank,* supra. In our opinion, the decree of the lower court is right, and should be—*Affirmed.*

LADD, C. J., EVANS and GAYNOR, JJ., concur.