L. A. ANDREW, Superintendent of Banking, v. AMERICAN SAVINGS BANK AND TRUST COMPANY of Burlington; IN RE RECEIVERSHIP OF SAID BANK.

BENNER TEA COMPANY, Claimant, Appellee, v. L. A. ANDREW, Receiver, Appellant.

No. 42010.

NOVEMBER 14, 1933.

REHEARING DENIED MARCH 9, 1934.

Charles C. Clark, for appellant.

La Monte Cowles, for appellee.

ALBERT, C. J.—A rather extended statement of facts is necessary to a full understanding of the questions raised.

The American Savings Bank & Trust Company was a banking corporation under the laws of the state of·Iowa. On the 17th day of June, 1932, this corporation went into the hands of a receiver, and L. A. Andrew, superintendent of banking, was duly appointed receiver on that date. The Benner Tea Company was an Iowa corporation, engaged in the wholesale mercantile business. On the 30th of July, 1932, the Benner Tea Company filed in the receivership proceedings a petition claiming that it was entitled to the possession of 500 bags of coffee, containing 66,000 pounds, alleging that the same was held by Andrew, as receiver, and other necessary allegations that would ordinarily constitute an action in replevin, and praying that the receiver be ordered and directed to surrender and turn over to the plaintiff at once the aforesaid bags of coffee. Later, by amendment, it asked that the receiver be instructed to pay for said coffee and charge the same against the funds of the plaintiff on deposit in the insolvent bank. An answer was filed by the receiver denying the Benner Tea Company's claim, and later the receiver filed a cross-bill setting out numerous facts and praying that the Benner Tea Company be ordered and directed to pay the total amount of the indebtedness for said coffee, and for general equitable relief.

There is very little, if any, dispute on the facts in the case. The historical background of these questions, which is necessary to a fair understanding of the case, is as follows:

The Benner Tea Company purchased its supply of coffee from a brokerage house in Santos, Brazil. Its method of purchase was as follows: When it wished to make a purchase of coffee, it made application to the Amërican Savings Bank & Trust Company for a letter of credit. The American Savings Bank & Trust Company, not issuing letters of credit itself, advised the First National Bank of Chicago, which was its depository, of its desire for a letter of credit for the Benner Tea Company. Such letter of credit was duly issued by the First National Bank of Chicago and forwarded to the American Savings Bank & Trust Company at Burlington. On the back of such letters of credit was a provision reading as follows:

"Having received from you the Letter of Credit on our account, of which the annexed is a copy, for $———, U. S. Currency, the undersigned hereby agrees to its terms, and in consideration thereof

agree to pay you the amount of each acceptance under it, at maturity, in cash, or prior thereto, if you request it, and it is understood by the undersigned that the commission for accepting under this credit is to be $3/8 \%$ on drafts at 90 days sight, min. $5.00."

Numerous other provisions are there made with which we are not interested, and the same were signed "American Savings Bank & Trust Company" (by authorized official signature) and "Benner Tea Company." When the American Savings Bank & Trust Company received the same, it and the Benner Tea Company each signed as above indicated. Such letter of credit was then used by the Benner Tea Company to purchase coffee. On purchase of the coffee in Brazil, the bill of lading, invoice, and so forth, together with a draft drawn by the seller against the First National Bank of Chicago, were all attached and forwarded to the First National Bank. On receipt of same, the First National Bank advised the seller of its acceptance of said letter of credit for the amount of the purchase, and at the same time advised the American Savings Bank & Trust Company of its action and forwarded the bill of lading to the American Savings Bank & Trust Company, whereupon the bank advised the Benner Tea Company thereof and turned over to the Benner Tea Company the bill of lading by which, on its arrival, they acquired possession of the shipment of coffee. All purchases made were made on ninety days' time, so that there were no payments made on this letter of credit or by the Benner Tea Company or the American Savings Bank & Trust Company until the ninety days had expired. When that time had expired, the First National Bank charged to the account of the American Savings Bank & Trust Company the amount of said shipment (it might be here said that the First National Bank of Chicago was depository for the American Savings Bank & Trust Company), and advised the American Savings Bank & Trust Company of such charge against its account, whereupon the American Savings Bank & Trust Company advised the Benner Tea Company thereof and the Benner Tea Company gave to the American Savings Bank & Trust Company its check on it to cover the same. In all there were issued five such letters of credit for the benefit of the Benner Tea Company. All five of said letters of credit matured after the American Savings Bank & Trust Company went into the hands of a receiver.

Of the 500 bags of coffee involved herein, 250 bags were pur-

chased in May, 1932, and shipped on the 25th of May that year; the other 250 bags were purchased in May and shipped on June 1, 1932. To purchase the same, two letters of credit were used, one numbered GCC 8888, dated May 4, 1932, and the other numbered GCC 9010, dated June 7, 1932. In due time the bills of lading and drafts drawn against the First National Bank of Chicago under these letters of credit reached the Chicago bank, and the shipment of coffee reached Burlington. In the intermediate time the American Savings Bank & Trust Company had gone into the hands of a receiver. The First National Bank, being advised of this fact, forwarded the bill of lading to the American Savings Bank & Trust Company and ordered the coffee put in storage, which was done, and the storage receipt forwarded to the First National Bank of Chicago, whereupon the Benner Tea Company filed its claim in the receivership as above stated for the possession of this coffee. Later, by stipulation of the parties which provided among other things that the signing of the same should not prejudice the rights of either party in the litigation, the coffee was turned over to the tea company. When the matter came on for hearing in the district court, it is undisputed that, including the letters of credit above referred to signed under the same circumstances and conditions, there had been five letters of credit issued by the Chicago bank for the benefit of the Benner Tea Company, amounting to a total sum of $11,480. It is also undisputed that at the time the bank closed, the Benner Tea Company had on deposit the sum of $22,633.95, and the Benner Tea Company seeks, by proper pleading, to offset the amount due on these five letters of credit against the aforesaid deposit in the American Savings Bank & Trust Company. After the coffee had been put in storage as above set out, these five letters of credit reached their maturity, whereupon the First National Bank notified the receiver Andrew of the different dates of said maturities, and, after a series of correspondence between that bank and Andrew as receiver, the bank charged the amount due on these five letters of credit against the deposit it held of Andrew, receiver, and the American Savings Bank & Trust Company, and so advised Andrew, and later Andrew, as receiver, approved the action of the Chicago bank, and thus all indebtedness to the Chicago bank was liquidated.

The receiver's claim, therefore, at this point is narrowed down to a claim against the Benner Tea Company for the amount thus paid by the receiver to the Chicago bank to make said liquidation.

The Benner Tea Company in no way disputes the accuracy of this claim, but meets it by saying that it should be offset against its deposit account in the American Savings Bank & Trust Company. The district court made an order on the receiver that the coffee should be turned over to the Benner Tea Company, and also allowed the offset claimed by it as against the receiver.

We have said in our cases that the right of offset is an equity product and not a legal one. In Brown v. Sheldon State Bank, 139 Iowa 83, 117 N. W. 289, we said:

"It is the rule in this state, as it is in many other jurisdictions, to allow set-off where parties are mutually indebted and one becomes insolvent. And it is not material that the indebtedness, sought to be cancelled by offset, is not due at the time."

We reannounced this doctrine in the case of Andrew v. Dundee Savings Bank, 216 Iowa 240, 249 N. W. 154. See, also, 57 C. J., p. 364, section 9 et seq.

It is a well-known principle of equity that in these receivership matters the rights of all parties are to be determined as of the date of the appointment of the receiver, in this case, to wit, the 17th day of June, 1932. The first question, then, to be determined is whether or not, under the first rule above quoted, the Benner Tea Company was indebted to the American Savings Bank & Trust Company on the 17th of June, 1932. To a solution of this question it is necessary to determine just what the relations were between these parties. It is apparent from the record that the transactions in relation to these letters of credit were for the benefit of the tea company. When the letters of credit were issued in the first instance, there was only a contingent liability to the Chicago bank, which ripened into an actual one by the use of the letters of credit. At that point the real party in interest, the Benner Tea Company, became indebted for the amount shown by the letter of acceptance to the First National Bank of Chicago. In fact, under the writing above set out on the back of the letter of credit, both the Benner Tea Company and the American Savings Bank & Trust Company became indebted to the Chicago bank, but the real party in interest was the Benner Tea Company. The liability, if any, from the American Savings Bank & Trust Company to the Chicago bank, was a direct liability. As between the Benner Tea Company, however, and the American Savings Bank & Trust Company, under date of June 17,

1932, the Benner Tea Company was legally obliged to pay the amount on these letters of credit. The fact that they were not as yet due was not a material consideration, under our cases, as we have heretofore pointed out. It must follow, therefore, as a conclusion, that the indebtedness which the receiver of the American Savings Bank & Trust Company subsequently paid to the Chicago bank was equally an indebtedness due from the Benner Tea Company to the American Savings Bank & Trust Company at the time when it went into the hands of the receiver. This is shown not only as a legal proposition, but by the course of conduct between the Benner Tea Company and the American Savings Bank & Trust Company. All the requirements that equity demands existed in the present case in order to make a set-off. In other words, there was a mutual indebtedness and one of the parties (the bank) became insolvent, and this, in equity, entitled the Benner Tea Company to the right of set-off. It follows, therefore, as a matter of course, that the decree of the court in relation to such set-off was correct, and the 500 bags of coffee having been adjudged by the court to belong to the Benner Tea Company, it follows that it was equally indebted to the receiver of the bank and that the same was taken into consideration by the court in allowing the set-off. The court's decree, therefore, in granting the coffee to the Benner Tea Company was correct.—Affirmed.

STEVENS, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.