AMES TRUST AND SAVINGS BANK, an Iowa corporation, appellee, v. HERMA E. REICHARDT, administratrix of estate of Charles R. Reichardt, appellant.

No. 50869.

(Reported in 121 N.W.2d 200)

April 9, 1963.

1274

Pasley, Singer & Seiser, of Ames, for appellant.

Hirschburg, Reynolds, Gilchrist & Nutty, of Ames, for appellee.

MOORE, J.—The question presented by plaintiff-bank's petition in equity for declaratory judgment is whether it had a right to apply the balance of Charles R. Reichardt's deposit as payment on his note which was unmatured and unsecured at the time of his death. Defendant-administratrix contends: (1) plaintiff had no right of equitable setoff, (2) it would defeat the rights of other creditors, and (3) plaintiff waived any right to and is estopped from claiming a setoff. The trial court entered a decree for plaintiff. Defendant on this appeal asserts the court erred in denying each of her three contentions.

There is no dispute as to the evidentiary facts. Defendant's answer and application for adjudication of law points admit the facts as pleaded in the petition. The decree is based on the undisputed facts and the law applicable as adjudicated by the trial court.

On March 9, 1962, Charles R. Reichardt paid a $5606.48 note to plaintiff, leaving a balance of $103.48 in his checking account in plaintiff's bank. He then borrowed $3000 from plaintiff on an unsecured note maturing September 5, 1962. The $3000 was deposited to his account. Mr. Reichardt died intestate March 21, 1962. Between March 9 and 21 he wrote seven checks and made a deposit of $600. Five of the checks totaling $560.97 were paid before his death. The other two totaling $355.41 payable to Story County for taxes were paid March 23 from the deposit in Mr. Reichardt's name. This left a balance of $2787.10 which on April 2 was transferred by plaintiff-bank to the credit of the estate of Charles R. Reichardt, Herma E. Reichardt, administratrix, she being the widow and duly appointed administratrix.

Between April 2 and 17, 1962, she deposited $143.85, proceeds of an account collected by her, and drew a check of $47.50 to pay her bond premium and two checks of $150 each payable to her personally in part payment of her widow's allowance.

She had obtained an ex parte order on April 5, 1962, for a $1500 widow's allowance.

On April 17, 1962, the financial condition of the estate first became known to plaintiff. It refused to pay any further checks drawn on the estate account and claimed the right to set off the $2583.45 balance in the account against decedent's $3000 note.

The financial condition of the estate was:

Exempt property of the total value of $19,901.57 consisting of the equity in a homestead held in joint tenancy by the decedent and Herma E. Reichardt with right of survivorship, having a net value of $16,701.57, a Pontiac car valued at $1700, household furnishings valued at $1000 and cash received from the sale of tools in the sum of $500.

Nonexempt property of the total value of $4449.57 itemized as follows: Bank balance $2583.45, cash on hand from an account collected of $1166.12 from which $200 was retained by the administratrix as widow's allowance, leaving net cash on hand of $966.12 and $900 in cash realized from the sale of the remaining property belonging to the estate, being a truck sold for $500, building material sold for $250 and an automobile sold for $150.

Liabilities of the estate in the total sum of $6970.58 and consisting of the following listed in the order of their priority of payment: Costs of administration $750, expenses of last illness and burial $1898.60, payment of balance due on the widow's allowance $1000, totaling $3648.60. This would leave a balance of $800.97 with which to pay claims of plaintiff and McDowell Insurance Agency which total $3321.98.

I. The homestead held in joint tenancy with right of survivorship is not property subject to the claims of any creditor of the estate. The survivor does not acquire title through the deceased, but by virtue of the deed. Wood Admr. v. Logue, 167 Iowa 436, 149 N.W. 613; Tiemann v. Kampmeier, 252 Iowa 587, 107 N.W.2d 689, and citations.

The exempt personal property, by section 635.7, Code of 1962, is "set aside" to the widow as "her property". The statute provides that when the head of the family dies the

exempt personalty will be the widow's and exempt in her hands. Section 635.7 vests absolute property in the widow immediately upon the death of the intestate. The purpose of the inventory is to identify the property to see if it is actually exempt. It forms no part of the deceased's estate and is not subject to the debts of, or distribution in, the estate. In re Estate of Jones, 239 Iowa 1364, 35 N.W.2d 36, and citations. Without the homestead and exempt personalty the estate in the case at bar is insolvent. It is the primary ground on which the bank claims a right of setoff.

II. The first two propositions relied on for reversal by administratrix are interwoven and are considered together. If the bank is permitted the claimed right of setoff, funds for payment of other creditors will necessarily be reduced.

The precise question of whether a bank may set off a deposit against the unmatured debt of a deceased depositor where the estate is insolvent has not previously been presented to this court. It is a question on which many opinions have been written resulting in a sharp split of authority. In 7 Am. Jur., Banks, section 634, pages 460, 461, it is said:

"§634. Effect of Death of Depositor.—The bank's right of setoff or application to the payment of a depositor's indebtedness exists as against the administrator or representative of the depositor, attempting to recover the deposit after his death. According to the weight of authority, the fact that the debt owing to the bank is not mature does not, where the estate is insolvent, prevent the bank from setting off the debt against the deposit of the decedent. And in a case where the debt matured the day after the death of the depositor, the bank was allowed to set it off against the deposit. However, in the absence of circumstances entitling it to equitable relief, a bank has been denied the right to set off a claim against a decedent which was not due until after his death. Some courts deny the right of a bank to set off an unmatured debt of a decedent against a deposit standing in the decedent's name, even though the decedent's estate is insolvent."

In the pocket part this amendment to follow the first sentence of section 634 is found:

"On the question of whether the claim of setoff is entitled to priority over a family's or widow's claim for allowance, the authorities seem to favor the view that where the bank has the right of setoff, the deposit is not the proper subject of such an allowance to the widow or family. The state of the authorities renders it unwise, if not impossible, to lay down any general rule in regard to the bank's right of setoff where the depositor is deceased and the debt is unmatured. This question is controlled by several different considerations, any one of which may be sufficient ground for allowing or disallowing the bank's claim. If any rule can be said to be fairly well established in this class of case, it would seem to be the rule that apart from statutory provisions, whatever right the bank possesses depends upon equitable principles."

See also 9 C. J. S., Banks and Banking, section 305, pages 633, 634.

Kasparek v. Liberty Nat. Bk., 170 Okla. 207, 208, 209, 39 P.2d 127, 128, 129, 108 A. L. R. 774, 776, 777, factually is almost identical with the case at bar. It reviews similar cases from many jurisdictions and based on the cited decisions holds the bank had a right to the payment of a note executed by the depositor, where it matured after the death of the maker. The estate was insolvent. The court said:

"It is generally held that the relation between a bank and its general depositor is that of debtor and creditor. That the money deposited is no longer the property of the depositor, but becomes the property of the bank and is used as such in its general business, and the bank merely becomes debtor to the depositor to the extent of the general deposit, such debt being payable upon demand. * * *

"This right of a bank is more accurately a right of set-off for it rests upon, and is co-extensive with, the right to set-off as to mutual demands. * * *

"As to the right to apply upon an unmatured obligation, it is generally held that in the absence of insolvency the right does not exist. Plaintiff concedes this to be the general rule. This rule, however, is not universally applied where the de-

positor dies before the maturity of his indebtedness to the bank. * * *

"In case of insolvency the great weight of authority appears to be in favor of the right to set off an unmatured debt."

At page 781, 108 A. L. R., the majority rule is stated:

"In the earlier annotation in 43 A. L. R. 1328, noted above, it is said: 'While there is a good deal of conflict as to whether a bank has the right to set off an immature claim against the deposit of an insolvent, in the majority of jurisdictions it is held that on the insolvency of a depositor a right of setoff exists against the insolvent or his assignee even though the bank's claim against the insolvent is not yet due, the cases evidently proceeding on the theory that insolvency renders all debts due, and furnishes, of itself, a sufficient ground for setoff.' This statement may be applied to the cases involving setoffs against deposits of decedents. In such cases the weight of authority, at least numerically, supports the view that a bank may set off a deposit against the unmatured debt of a deceased depositor where the estate is insolvent."

Additional quotes from the cases cited in support of the majority rule would unduly lengthen this opinion. We believe we are committed to a rule allowing setoff against an unmatured note where insolvency is proven. In Thomas v. Exchange Bank of Angus, 99 Iowa 202, 68 N.W. 780, 35 L. R. A. 379, the bank when informed a depositor had made an assignment for the benefit of creditors refused to honor checks drawn by him. It claimed a right to offset the deposit against depositor's undue note. The court sustained the bank's contention. At page 208, 99 Iowa, page 781, 68 N.W., it is said:

"Appellants further contend that, as the note was not due, the bank had no right or authority to offset the deposit as against it. That this is or has been the rule at law may be conceded; but such is not the rule in equity, and it may well be doubted whether under our statutes it is now the rule at law. But this question we need not determine, for it is almost universally held that, if the debtor be insolvent, a bank may offset as against a debt not due any sum which it may be owing to the debtor, unless of course the account which it owes has been

pledged to some specific purpose, or is impressed with some trust." (Citations)

In addition to the fact of insolvency in the case at bar equitable consideration clearly indicates the setoff should be allowed. The source of the deposit was the credit given Mr. Reichardt by the bank. It did not come from his labor or other assets.

Defendant's contention that to allow the setoff would wrongfully defeat other creditors is without merit. In Sullivan v. Merchants' Nat. Bk., 108 Conn. 497, 503, 144 A. 34, 35, 36, it is said:

"It is sometimes said the allowance of the set-off does an injustice to the creditors of the insolvent who are entitled to an equal share of all of his estate, which gives them an equity superior to the equity of the creditor to his set-off. * * * The answer is not hard to find. The equity of the general creditor is in the balance remaining after the set-off. It does not begin until the set-off has taken place. The equity of the creditor of the insolvent is not only superior in time but superior in merit to that of the general creditors."

III. Administratrix' claim that the bank is barred by waiver and estoppel is without merit. On her claim of waiver administratrix relies on In re Tietje, 263 F. 917 (District Court, E. D. New York), in which the bank transferred a depositor's account to administratrix. She continued to operate a business for several months as though her husband were still living until the bankruptcy proceedings. During that period the bank took her deposits and honored her checks as regular business transactions. It took new notes signed by the administratrix from time to time with Mrs. Tietje's personal endorsement as additional security. The bank's setoff claim was denied in the bankruptcy proceedings on the ground it had waived its right of setoff. The facts in the case at bar are vastly different. The very day plaintiff-bank learned of the insolvency it refused to honor checks and insisted on its right of setoff. There is a total lack of evidence of the relinquishment of a known right on which a waiver must be based. The administratrix, as personal representative, stepped into the shoes of the decedent,

acquiring no better or higher title than he had. Recognition and dealing with her as such prior to knowledge of insolvency in our opinion was not a waiver by the bank of its rights of setoff.

██ The burden of proof is on the party alleging and relying on estoppel. Goodwin Tile and Brick Co. v. DeVries, 234 Iowa 566, 13 N.W.2d 310, 155 A. L. R. 346; In re Trust of Lunt, 235 Iowa 62, 16 N.W.2d 25; In re Estate of MacVicar, 251 Iowa 1139, 1144, 104 N.W.2d 594, 598. Equitable estoppel is based on fraudulent conduct or a fraudulent result. One must knowingly take a position with intention that it be acted upon, and reliance thereon by another to his prejudice. In re Estate of MacVicar, supra, and citations. We have no such evidence in this case.

██ This suit being in equity where the facts are not in dispute we give no weight to the findings of the trial court as the credibility of witnesses is not a factor. It is triable de novo and its final determination for this court. Cassaday v. De-Jarnette, 251 Iowa 391, 393, 101 N.W.2d 21, 23. However, after a careful examination of the record we find ourselves in accord with the decree of the trial court.—Affirmed.

All Justices concur.