**Alan A. OLSEN d/b/a Olsen's A. G. Food Market, Appellant,**

v.

**The HARLAN NATIONAL BANK, Harlan, Iowa, Appellee.**

No. 53045.

Supreme Court of Iowa.

Nov. 12, 1968.

Hanson & Barron, Audubon, James Furey, Carroll, for appellant.

William O. Lewis, Harlan, for appellee.

BECKER, Justice.

Action by plaintiff, as general checking account depositor, for $5849.05 against defendant depository bank. Defense by bank asserted plaintiff was not the true owner of the account but was acting for Grocers Wholesale Cooperative, Inc., which was indebted to the bank in the same amount; that the bank had offset its claim against Grocers Wholesale, the true owner of the account, and thus the bank owed plaintiff Olsen nothing. Upon trial the court held for defendant and dismissed plaintiff's petition. We reverse.

Prior to February 22, 1965 Donald C. and Orin K. Goodrich operated Goodrich's A. G. Supermarket in Harlan, Iowa. Goodrichs were indebted to Grocers Wholesale Cooperative, Inc. in the amount of $35,000.00 secured by three recorded chattel mortgages. On February 20, 1965, Grocers Wholesale, the mortgagee foreclosed on, took possession of, and bid in the chattels

constituting the merchandise and fixtures of the supermarket.

No complaint is made as to the legality of this foreclosure which was made in accordance with the terms of the mortgages.

On February 22, 1965 plaintiff Olsen was present at the store, inventory was taken and oral arrangements were made for him to buy the store. Goodrichs were indebted to defendant bank at the time of foreclosure in the amount of $6445.55. Five days after the foreclosure, on February 25, 1965 they executed an assignment to the bank of "any amount of funds received by Grocers Wholesale Cooperative, Inc. from the proceeds of said repossession over and above the indebtedness of said Goodrichs to Grocers Wholesale Cooperative, Inc." Notice of this assignment was promptly given to Grocers Wholesale.

On February 23 plaintiff Olsen commenced operation of the supermarket, opened an account in defendant bank under the name of Olsen's A. G. Store and deposited the proceeds of the previous day's sales, $891.27. Olsen's testimony included: "When I talked to F. J. Lewis, (President of the bank) I told him I attended (Grocers Wholesale) Board meetings. I told him the funds I was depositing were from the receipts from the previous day. I am sure that I told him I had purchased the store and that I was looking for a place to borrow operating capital, I wanted to borrow five thousand dollars at his bank. He told me that I could if my mother would sign the note.

"I told him I hadn't signed the papers yet. *There had been no legal, only oral agreement between the manager, president and myself, that I would purchase the store at a fair appraised price,* and that was the inventory that we had talked about or had taken on Sunday and a professional appraisal of the fixtures. Of course, that wasn't determined immediately on Sunday, I mean as far as the appraisal of the fixtures." (Emphasis supplied.)

On the same subject F. J. Lewis testified in relation to the opening of the account: "Had conversation with Olsen in regard to the grocery store. Olsen talked about buying this grocery store at some time in the future and stated that he was—I understood him to say an Assistant Director of Grocers Wholesale Cooperative and they had a mortgage and they took over the mortgage of the Goodrich Grocery Store. Our bank had a note against the Goodrichs. And Mr. Olsen and I visited about this, and about the possibility of there being other claims besides the bank claim and the Grocers Wholesale claim, and he told me that he was going to operate the store, and in the future make arrangements possibly to buy it. At that time, understandably, I think everything was a little bit up in the air. I, at least, didn't know where the Goodrichs were going to go, or what other assets or liabilities people might have. He opened up an account with my bank, and we discussed his finances. We talked about getting him, I think he was correct, about five thousand dollars, to assist him in opening and operating this store when and if he made the deal with Grocers Wholesale. This was on the basis, as I remember, that his parents would sign the note with him."

By letter, received by the bank about March 9, 1965, Grocers Wholesale Cooperative, Inc., through its attorney, advised the bank of the mortgage foreclosure, indicated the amount due under the mortgages, the amounts realized by sale and showed a balance due the Goodrichs of $5849.05. The bank offered the letter over plaintiff's objections and does not take issue with the accounting. The letter also contained the following:

"On February 26, 1965, Grocers Wholesale Cooperative, Inc., received notice of an assignment of this remaining balance, said assignment being from Goodrich to the Harlan National Bank. However, Grocers Wholesale Cooperative, Inc. has retained and now retains the balance due

Goodrich in said amount of $5849.05, pending determination as to who is entitled thereto. .

"We assume that the proceeds of this sale, over and above the amount of the prior lien of Grocers Wholesale Cooperative, Inc., should be held for creditors according to their separate, several amounts and priorities. At this writing, we do not have exact information on these claims.

"It is anticipated that the store will be operated under a new purchaser, but formal Bill of Sale has not been made to any purchaser at this time from Grocers Wholesale Cooperative, Inc., as seller."

On March 12, 1965, when the Olsen account, from store receipts, had grown to $14,624.00, the bank charged the account $5849.05 as an offset. It claimed such sum was due it from Grocers Wholesale by virtue of the assignment it had received from the Goodrichs. Immediately before taking the offset the bank notified both plaintiff and the attorney for Grocers Wholesale that the offset would be taken.

Grocers Wholesale filed an interpleader action in federal court and deposited therewith the sum of $5849.05. The date of filing is not shown in the record. The trial court noted the existence of this case and that it was being contested by Olsen but held it was immaterial to the problem posed by the issues before it.[1]

I. This case was tried as a law action and will be so treated by us on appeal. The trial court's findings of fact, if supported by substantial evidence, are binding upon us. Iowa Rules of Civil Procedure, 344(f) (1).

II. The trial court found the bank account was in the exclusive control and possession of Grocers Wholesale through its agent Olsen on the date of the offset. On that date Grocers Wholesale was indebted to defendant bank in the amount of $5849.05 by virtue of the Goodrich assignment and therefore the offset was proper.

 Plaintiff assigns as error the court's finding as a fact that Grocers Wholesale had exclusive control and possession of the bank account on the date of the offset. The factual recitation given above includes substantial evidence to show ownership in Grocers Wholesale until March 27, 1965. The court could find Olsen was acting as agent for Grocers Wholesale in making the deposit. There is also substantial evidence in the form of government licenses, tax permits and the like to show the sale had been completed at the time of oral arrangements to take over the store. Under such evidence the account belonged to Olsen. The issue was for the trier of the facts. We do not substitute our judgment on this finding. This is true even though we might have reached a different conclusion on the same evidence. Pond v. Anderson, 241 Iowa 1038, 1049, 44 N.W.2d 372, 378–379. We treat the account as owned by Grocers Wholesale but carried on the bank books in the name of Olsen.

III. In its conclusions of law the court noted this court has frequently permitted offsets by banks against depositors even though the account was not in the same name as the debt of the bank, citing Ames Trust & Savings Bank v. Reichardt, 254 Iowa 1272, 121 N.W.2d 200, 7 A.L.R.3d 900; Thomas v. Exchange Bank of Angus, 99 Iowa 202, 68 N.W. 780; Andrew v. American Savings Bank, 217 Iowa 657, 251 N.W. 48. It concluded the offset by the bank against the account found to be the actual property of Grocers Wholesale was proper and dismissed the petition.

Plaintiff attacks the court's conclusion that the offset was proper. This is a

---

1. The result of the interpleader action can be found in Grocers Wholesale Cooperative, Inc. v. Goodrich, D.C., 251 F.Supp. 751. Since we have no reason to believe the trial court knew of this opinion and, inexplicably, it has not been cited to us, we do not consider its factual results in reaching our conclusion here.

more difficult question. Taking the facts as found by the trial court to be true, does the bank have the right to an offset under such circumstances?

■ A bank does not have the right to offset its claim against a deposit in every case where the depositor owes the bank money. In Sherberg v. First National Bank of Englewood, 122 Colo. 407, 222 P.2d 782, 785, the Colorado Supreme Court said: "The correct rule with respect to the right of set-offs by banks is well stated in the recent case of American Surety Co. v. De Escalada, 47 Ariz. 457, 56 P.2d 665. We quote from paragraph 2 of the syllabus: 'Generally, where bank has in its possession assets of debtor, bank may apply these assets to payment of a matured debt or, in case of insolvency of debtor, to an unmatured one, but such right may be controlled by any special agreement which shows a different intent or where circumstances or particular modes of dealing are inconsistent with such right.'" Cf. George D. Harter Bank v. Inglis, 6 Cir., 6 F.2d 841; Commercial National Bank of Independence, Kansas v. Stockyards Loan Co., 16 F.2d 911 (8 Cir.); Citizens' & Southern Bank v. Fayram, 5 Cir., 21 F.2d 998; Cassedy v. Johnstown Bank, 246 App. Div. 337, 286 N.Y.S. 202.

Hanby v. First Savings Bank, 197 Iowa 150–152, 197 N.W. 51, 52, a case tried at law to a jury contains the following: "A bank to whom a depositor is owing a matured indebtedness may appropriate the general deposit of its debtor to the discharge of the obligation. With this rule there is no quarrel. It is no less certain that a deposit made for a special purpose or under a special agreement or with knowledge or notice of the bank of its trust character cannot lawfully be so appropriated. Our own views on this proposition have been frequently expressed before. Thomas v. Exchange Bank of Angus, 99 Iowa 202, 68 N.W. 780; Smith v. Des Moines Nat. Bank, 107 Iowa 620, 78 N.W. 238; Smith v. Sanborn State Bank, 147

Iowa 640, 126 N.W. 779; Dolph v. Cross, 153 Iowa 289, 133 N.W. 669; Porter Auto Co. v. First National Bank, 185 Iowa 844, 171 N.W. 121.

"When a person has money which in equity and good conscience belongs to another, and it can be traced into the hands of such person who has neither paid a valuable consideration therefor nor changed his relation to the person from whom the fund was received so as to give rights to any equitable defense against the claims of the true owner of such fund, the latter should recover, when it is shown that he who claims it against the true owner has notice of the trust character of the fund so received or appropriated."

■ The right to offset, as with so many other rights, depends on the facts of the individual cases. In Iowa offset has been allowed where; a firm account stood in the name of "B" but, without knowledge to the bank, the money actually belonged to a silent partner, Allen v. Brown, 39 Iowa 330; money in a general account was deposited, unknown to the bank for a special purpose, Porter Auto Co. v. First National Bank, 185 Iowa 844, 171 N.W. 121; the offset was against money in a firm name but the individual debtor to the bank and the firm entity were one and the same, Thomas v. Exchange Bank, 99 Iowa 202, 68 N.W. 780, 35 L.R.A. 379; the actual proceeds of a loan to a deceased insolvent were in the account of executrix of an insolvent estate, Ames Trust and Savings Bank v. Reichardt, 254 Iowa 1272, 121 N.W.2d 200, 7 A.L.R.3d 900; the proceeds of an insolvent business were deposited, without notice to the bank, by a receiver in the general account of the insolvent business, Wilson v. Bulletin Publishing Co., 192 Iowa 860, 185 N.W. 893.

On the other hand, offset has been forbidden where an insolvent made a deposit with a special agreement that it was not to be offset against general debts, Smith v. Sanborn State Bank, 147 Iowa 640, 126

N.W. 779; a special account was established by an insolvent for a contest prize and the future but contingent rights of contest entrants might intervene, Peterson v. Central National Bank & Trust Co., 219 Iowa 699, 259 N.W. 199; See also, Bielen v. Central National Bank & Trust Co., 224 Iowa 19, 276 N.W. 25; or where stockholders of an insolvent bank desired to set their deposits off against statutory assessment for restoration of impaired capital, Andrew v. Bronson Savings Bank, 221 Iowa 98, 265 N.W. 113. Other cases where offset was not allowed are Enix v. Hays, 48 Iowa 86; Percival v. Strathman, 112 Iowa 747, 84 N.W. 929 and Hanby v. First Savings Bank, quoted supra. Cf. Annotation, 8 A.L.R.3d 235.

We have found no cases raising the precise question raised here; i. e., can a bank offset a claim it has acquired from a third person against the depositor who is the debtor of the third person but who, as debtor, gives notice to the bank that he is holding the third person's funds for the benefit of others?

The rationale for the rule found in Hanby v. First Savings Bank, supra, is stated in Michie, Banks and Banking, Vol. 5A, Permanent Edition, ch. 9, section 114, p. 274: "The rule rests upon the principle that as the depositor is indebted to the bank upon a demand which is due, the funds in its possession may properly and justly be applied in payment of such debt, and it has therefore a right to retain such funds until payment is actually made. *The lien is given upon the theory that any credit the bank extends to its customer by way of loan or overdraft is given on the faith that money or securities sufficient to meet the debt at its maturity will come into the possession of the bank to discharge the same.* Another reason given for the lien is that the bank gives credit to the depositor by allowing overdrafts, or permitting notes or bills to become overdue, on the faith of the general deposit then in its hands, which it can at any time apply to the payment of its debt then past due.

The right to make applications of such funds also arises from the contract implied to exist from the relation of the parties and by operation of law. The bank's right is referable to principles of equity, as well as statutory set-off provisions. Such right is not absolute or paramount to superior equities. This right may be set up as a defense to an action to recover the deposit. But a bank cannot apply a deposit to a depositor's debt to the bank where set-off is contrary to the agreement under which the deposit was made." (Emphasis supplied.)

9 C.J.S. Banks and Banking § 296, p. 616 states: "It has been said that a bank's right to apply funds held by it to payment of the indebtedness of a depositor presupposes that the fund deposited in the bank by the depositor was his, that it was deposited without restrictions and was not a special fund, and that there is an existing indebtedness then due and owing from depositor to bank. Mutuality of indebtedness is essential."

Where a loan agent deposited money in the name of "J. L. Burke, Agent" the bank could not offset its claims against the agent, personally, Bank of Guntersville v. Crayter, 199 Ala. 599, 75 So. 7. The case is helpful for its short review of the reason for a bank's right to offset claims: "The reason given for the laws creating the lien is that the bank gives credit to the depositor by allowing overdrafts, or permitting notes or bills to become overdue, on the faith of the general deposit then in its hands, which it can at any time apply to the payment of its debt then past due. To justify the lien, there must be credit upon the faith of the deposit then on hand, and it must be a general deposit and not a special one. In such cases, if the debt to the bank is past due, it may, without the consent of the depositor, apply a general deposit to the past-due indebtedness to it. If the bank is sued by a depositor as for a general deposit, or for failure to pay a check when it has funds in hand from which the order

could be paid, it may set off a debt then due it by the depositor; but it cannot, without the consent of the depositor, apply or set off a fund as against a debt not then due. Birmingham Nat. Bank v. Mayer, 104 Ala. 634, 16 So. 520.

"This rule, however, does not apply to cases where a trustee, agent, or broker deposits funds of his beneficiary, or principal, and the bank has, or is chargeable with actual notice of the trust character of the deposit. Nor has the bank such a lien upon funds deposited for a special purpose, if it has notice or is chargeable with notice of such special purpose."

■ We believe the foregoing principles are controlling here. The letter from Grocers Wholesale acknowledging indebtedness to the Goodrichs also informed the bank that Grocers Wholesale claimed to hold the overplus as a stakeholder. Grocers Wholesale had neither asked for nor received credit from the bank. The bank acquired Goodrichs' claim as an additional security. There is no showing the bank changed its position in any way. The reasons for the right to offset fail here. We hold this acquisition of the Goodrich claim against Grocers Wholesale did not give the bank authority to offset the claim thus acquired against the account owned by Grocers Wholesale, whose position was that of stakeholder for Goodrichs' creditors.

■ Plaintiff also complains of the court's action admitting the Grocers Wholesale Letter into evidence. This question is not without difficulty but is now moot. Under the view of the facts taken in this case plaintiff is not prejudiced by the admission of the letter. Defendant bank, having offered the exhibit in its entirety, cannot complain of its admission into evidence. Glatstein v. Grund, 243 Iowa 541, 549, 51 N.W.2d 162, 168, 36 A.L.R.2d 531; Azeltine v. Lutterman, 218 Iowa 675, 254 N.W. 854 and Walker v. Stannis, 3 G. Greene 440.

■ IV. Since the bank failed to support its right to offset plaintiff was and is entitled to have his demand honored. His position as agent does not affect this right in the absence of action by Grocers Wholesale denying the authority of its agent. In Fidelity & Dep. Co. of Maryland v. Merchants Nat. Bank, 223 Iowa 446, 451, 273 N.W. 141, 143, we said: "It is practically the universal holding that a bank is not charged with notice of, nor liability for, a misappropriation of an agent from the mere fact that the agent deposits funds to his own or his principal's account and thereafter misappropriates the funds by checks drawn upon the account. The mere fact that a bank has notice that the funds deposited belong to a principal imposes no duty upon the bank to inquire as to the agent's authority to make the deposit or withdraw the funds." Nor is this the case where the bank had notice of an adverse claim to the deposit such as occurred in Gendler v. Sibley State Bank, D.C., 62 F.Supp. 805. We need not be concerned with the various rules there examined by Judge Graven. In the absence of notice of adverse claim the statement of this court in Elliott v. Capital City State Bank, 128 Iowa 275, 103 N.W. 777; 1 L.R.A.,N.S., 1130 is germane. "The depositor having the right to demand the amount due him at any time, and the bank having the right to pay at any time, there can be no extension of the statute of limitations by either party, nor any laches on the part of either." The bank had the duty to meet its depositor's demand. Not having done so, it should be ordered to do so now.

Neither party elected to interplead Grocers Wholesale and although Grocers Wholesale clearly had actual knowledge of the nature of the dispute, it did not elect to intervene. Under such circumstances the action of Olsen in seeking to withdraw the funds was legal whether he was found to be acting as principal or as agent at the time the action was taken. Judgment must be entered in favor of

plaintiff and against defendant for the amount claimed with interest and for costs. Reversed and remanded.

All Justices concur.