OHIO VALLEY NATIONAL BANK OF HENDERSON, Appellant,

v.

Evelyn EDWARDS et al., Appellees.

Court of Appeals of Kentucky.

March 23, 1973.

King, Deep, Branaman, Hunt & Sheffer, Robert G. Hunt, Henderson, for appellant.

Thomas L. Withers, Mitchell, Withers & Neel, Henderson, for First National Bank of Henderson, Georgia-Pacific Corp., Pope & Talbot, Inc. and Evans Products Co.

Dorsey, Sullivan & King, Henderson, for appellee Evelyn Edwards, individually and as executrix of the will of E. Cecil Edwards.

CULLEN, Commissioner.

The primary issue here is whether a bank creditor of a decedent's insolvent estate lost its right to set off a deposit in the bank against the debt owed by the decedent to the bank. The circuit court denied the right of setoff and the bank has appealed.

When E. C. Edwards died on July 18, 1968, he had on deposit in the Ohio Valley National Bank of Henderson (hereinafter "the bank") the sum of $9,735.83. However, Edwards was indebted to the bank on two notes, of a total face value of $21,500, due in September 1968. The parties to this lawsuit all agree that at the time of Edwards' death the bank had the right to set off the deposit against the debt. The question is whether the bank lost that right by its subsequent conduct, which we shall relate.

On August 6, 1968, Edwards' widow, having qualified as executrix, was permitted by the bank to draw a check transferring the funds on deposit to an account in her name as executrix. At that time the bank had no inkling that the estate would prove insolvent. On August 20 the bank filed formal proof of claim with the executrix on the two notes, on the standard form which recited that there was no "offset" to the claim. In September, when the two notes to the bank became due, there was a meeting between the bank president and the executrix and her attorney. At that time the bank president was told in substance that the estate probably was insolvent, but there appeared to be some assets in a corporation of which the decedent was the sole stockholder. There was discussion at that meeting of the intent of the executrix to bring a settlement suit. Prior to the September meeting the executrix had paid a few small preferred claims from the bank account. After the meeting a period of some eight months elapsed during which the bank did not assert any right of setoff, and the executrix paid some more preferred claims from the bank account. Finally, in May 1969, the executrix brought a settlement suit, alleging insolvency of the estate, and an order was entered assigning the case to the master commissioner "to settle the estate and accounts" of the decedent. At that time the balance remaining in the bank account was

$7,601.75. In an "answer and counter-claim" filed by the bank in that suit, on May 20, 1969, the bank for the first time asserted the claim of right to set off what remained in the bank account against the debt owed to the bank. Claims totalling around $200,000 were filed in the suit, by various creditors, whereas the assets (including the bank account) amounted to only $42,500. The report of the master commissioner, filed in September 1969, rejected the claim of the bank "for preferred status." The bank filed exceptions to the report, and after due hearing the court entered judgment denying the bank's claim of the right of setoff, on the ground that the right had been "waived." Under the judgment the bank, as an ordinary creditor, recovered some $5,100 on its total debt which with accumulated interest amounted to around $24,500. If allowed the right of setoff, the bank's recovery would be about $5,000 more.

■ Whatever right a bank has to set off a deposit against a debt owed to the bank by the depositor, where the depositor's estate is insolvent, depends upon *equitable principles*. Annotation, 7 ALR 3rd 908 @ 913. The parties to this lawsuit agree that at the time of Edwards' death the bank had the right of setoff; in other words they agree that the *equities* gave the bank that right. The controlling question, it seems to us, is whether by virtue of subsequent events the equities *changed* so as to deprive the bank of its favored position. We are unable to find any such change in the equities.

■ There is no suggestion by any party that the position of any other creditor was in any way affected by the failure of the bank sooner to assert the claim of the right of setoff. No creditor maintains that he would have taken any different course of action had the bank promptly asserted its claim. No creditor says he was lulled into inaction. The equities in question are solely among the creditors, and none of them shows why his equities should be greater and the bank's lesser by reason of the bank's delay in asserting its claim.

The other creditors argue in their brief that the bank should lose its right of setoff because (1) when it filed its original claim it stated that no "offset" existed; (2) it permitted the executrix to transfer the money in the decedent's account to a new account in her name; (3) it allowed the executrix to draw checks on the new account; and (4) at the time the master commissioner filed his report, the bank honored a check by the executrix transferring the balance in the account to the master commissioner.

None of the argued reasons has anything to do with the *equities*. Courts of other states have recognized this in holding that a bank, in permitting the transfer of the funds from the decedent's account to one in the name of the personal representative, and in allowing checks to be drawn on the new account, did not waive its right to setoff. See Camden Nat. Bank v. Green, 45 N.J.Eq. 546, 17 A. 689; Ames Trust &' Sav. Bank v. Reichardt, 254 Iowa 1272, 121 N. W.2d 200.

It is our conclusion that as to the sum of $7,601.75 remaining in the estate account at the time the settlement suit was brought, the bank should have the right of setoff.

The bank makes several other assertions of error, in which we find no merit.

■■ One of the arguments is that the master commissioner's report should not have been sustained because the master commissioner did not hold hearings on the claims, did not require evidence to support the claims, and did not submit findings of fact and conclusions of law. We take it that this argument goes to the question of the validity of the claims of other creditors (which affects the percentage of recovery that the bank will receive). The established time-honored procedure in settlement suits of the kind here involved is that if the validity of a claim is contested, the issue is tried out before the *court* on excep-

tions to the master commissioner's report; the master commissioner does not try such issues; his concern is only that verified proof· of claim be filed with him. In the instant case the bank did not assert at any time, before the master commissioner or in court by exceptions to his report, that the claim of any other creditor was invalid. There simply never was any issue raised for the master commissioner or anyone else to try as to the validity of the claim of any other creditor.

Another of the bank's secondary arguments is that the circuit court should not have allowed credit to the executrix for money paid on 1968 income tax liability of Mr. Edwards. The bank first asserts that had advantage been taken of deductions for business losses, there would have been no income tax due. We consider this to be an impermissible collateral attack on the income tax determination. The bank next argues that Mrs. Edwards was equally liable with her husband's estate for the taxes due (which were on a joint return), and under the doctrine of marshalling of assets her liability should have been looked to first. Our answer to that is that the doctrine of marshalling of assets applies to *assets* in the form of funds, not to a mere personal liability.

The bank's last contention is that the circuit court erred in allowing the executrix a fee of $750. This is a trivial matter, because the allowance reduced the amount of the bank's recovery by less than $100. It is enough for us to say that we think the allowance was justified by the services rendered.

The judgment is reversed with directions for the entry of a new judgment in conformity with this opinion.

MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.