JACOB F. BLACKMAN, Appellee, v. W. K. CAREY et al., Appellants.

**BILLS AND NOTES:** Accelerating Maturity Date. A mere pledgee of a long-time note (of whose interest the maker is ignorant) may not promptly exercise a contract right to declare the note due and payable for failure to pay matured annual interest, when all parties know that the note has been lost, and the maker and original payee have an understanding that they will meet, about the time the interest falls due, and adjust all unsettled matters between them, including the making of a new note.

*Appeal from Guthrie District Court.*—H. S. DUGAN, Judge.

NOVEMBER 22, 1921.

ACTION to foreclose a mortgage prior to due date by reason of a default on the part of the mortgagor to pay the interest at the time stipulated. Decree entered finding equities in favor of the plaintiff.—*Reversed.*

*Swan, Clovis & Swan* and *Lynch & Byers,* for appellants.

*Carl P. Knox* and *Carl S. Foster,* for appellee.

DE GRAFF, J.—On the 5th day of March 1919 the defendant W. K. Carey executed and delivered his promissory note to Nel-

son Lawson in the sum of $11,500 due March 1st 1939 with interest at the rate of 5 per cent payable annually. To secure the payment of said note, Carey and his wife executed and delivered to Lawson a mortgage upon certain real estate situated in Guthrie County, Iowa. Subsequently the mortgagee Lawson for a valuable consideration made a written assignment of the said mortgage to plaintiff Jacob F. Blackman as vice-president of the First National Bank of Stuart, Iowa, and delivered to said bank in pledge the note and mortgage in suit.

The mortgage contained a stipulation to the effect that upon any default of the grantors to pay any interest or principal, when due, the grantee may declare the whole sum remaining unpaid immediately due and payable and may proceed by foreclosure.

Defendant Carey having failed to pay the annual interest due March 1, 1920, the original petition in foreclosure was filed by plaintiff March 13, 1920.

It further appears that the promissory note as originally executed was made payable at a bank at Anita, Iowa. By mutual agreement between Lawson and Carey, and at the request of the former, the parties met at the First National Bank at Stuart, Iowa for the purpose of changing the place of payment as recited in said note. At this time the note was in the possession of the Stuart bank under the terms of a collateral agreement between Lawson and the bank. The cashier of the bank gave the note to Lawson and the place of payment was changed in said note as requested. From that time to the present the note has been a lost instrument. What became of it no one seems to know. Carey denies ever having possession of it since its delivery, and there is no motive disclosed on his part for its destruction or concealment as he has at no time denied his liability thereon but has at all times acknowledged his liability and stood ready and willing to pay according to the terms of the note. The bank contends that the note was not returned to its possession after the cashier gave the note to Lawson in the bank for the purpose of changing the place of payment. Carey states that Lawson put the note in his pocket. Lawson is under the impression that Carey had the note for the reason that Carey

was the one who made the change as to place of payment on the note in the bank.

Subsequently to the making of the change at the bank it was discovered by the bank that the note was not among its papers, and on January 12, 1920 the cashier wrote to Carey at Anita as follows:

"At the request of Nelson Lawson I herewith inclose warranty deed * * * together with blank note. As Mr. Lawson has written you the original of this note was lost and this note is a duplicate. Will you please return the note to us after it is executed and oblige."

At this time the defendant Carey had no notice or knowledge that the bank had any interest in this note or mortgage and as a matter of fact Mr. Lawson had not written Carey concerning the lost note. In answer to the bank's letter three days later Carey wrote:

"In regard to the note I am willing to do the right thing about that if the note is lost. But Mr. Lawson is rather forgetful and he may have sold the other one and forgotten about it. However, if he does not find it in the course of time we will get it fixed up some how. It is a pretty large amount to have my name on twice."

Neither Lawson nor the bank offered to indemnify Carey at this time, if a duplicate note was executed by him. Late in the summer of 1919 or early in the fall Lawson and Carey had a conversation about the abstracts of title of the mortgaged land. Carey had purchased from Lawson the farm, which was the subject-matter of the mortgage in suit and at the time of purchase assumed the payment of a first mortgage in the sum of $2,500 and executed this second mortgage representing balance of the consideration.

Lawson had failed to pay the interest due on the first mortgage according to the land contract, and in order to prevent a default Carey had paid it for him. In this conversation this matter was discussed as well as the expense incurred by Carey in the continuation of the abstracts of title, as Carey had entered into a contract of sale of this land to defendant Forshay. Although the mortgage and note had been executed and delivered in March 1919, the deeds were not delivered until Janu-

ary 1920. In this conversation, Lawson also made mention of the fact that the note was lost. "I can't find it any place. What will you [Carey] do about it?" Carey said he would give a new note if the other one cannot be found, but "I want to know sure that it is lost." According to Carey's version of this conversation it was agreed and understood by and between him and Lawson that the entire matter relative to the execution of a new note, the payment of interest, and the expense incurred and paid by Carey on behalf of Lawson should be settled about the first of March. Carey's testimony is:

"You [Lawson] find out whether that note is lost and you can settle this back interest and we can settle the whole thing when we meet again the first of March as soon as we can get to it."

Lawson said:

"That is all right. You don't need to worry about me. If I can't find the note you will give a new note, will you?"

Upon a careful review of the record we are inclined to accept Carey's statements as reasonable and as representing the true understanding between Carey and Lawson as to the settlement of the different matters pending between them as a result of the land transaction.

The plaintiff is not a bona-fide holder of the note, but a transferee only. The note was not indorsed by Lawson at the time it was given in pledge to the bank. Furthermore whatever interest the bank had as a collateral holder was never disclosed by anyone to Carey. All parties concerned knew long prior to March 1, 1920 that the note was lost and even the letter written by the bank discloses that it was not the bank that was requesting the execution of a duplicate note. Lawson and Carey had a fair understanding in this matter several months before the letter was written by the bank. It may not be said that Carey was under any legal obligation to present himself at the bank and make tender of the interest due March 1, 1920 knowing all the time that the bank did not have manual possession of the note. The maker of a note when he pays interest to a party is entitled to know that said party is in possession of such note, and he is also entitled to a production of the note.

The law does not require the performance of a thing in a

formal way when such performance would be a useless procedure. It will be remembered also that the bank contrary to its usual custom gave no notice to Carey that it would expect the interest paid on March 1st nor did it give Carey any notice that it claimed any financial interest in this paper. The first notice that Carey had of any claim on the part of the bank was contained in the original notice served when this suit was instituted. The record discloses that Carey has always been willing to do the fair thing. He made tender of the interest due and the costs of suit within a short time after suit was begun. The failure of Carey to pay this interest when due was not a mistake or oversight caused by Carey's own carelessness or forgetfulness. Equity will not permit a person to throw another off his guard and through such means obtain an unfair advantage. A person cannot gainsay his own acts and assertions or mislead another to his detriment. If a party to a contract or transaction induces another to act upon the reasonable belief that he will waive certain rights or terms, he will be estopped to insist upon such rights to the injury of him who is misled thereby. Carey had the right to believe that the strict performance of the contract would not be required, and under such circumstances no claim can be justly made on the part of either Lawson or the bank to have this mortgage enforced which in effect is a penalty or forfeiture. Equity requires that a person refrain from enforcing a claim which he has induced another to suppose he would not rely upon. The defendant in this case is most seriously prejudiced, if plaintiff is allowed to enforce the default stipulated in the mortgage.

The record in this case has the atmosphere of strategy. There is no question had Carey understood that the condition was to be exacted he would have taken the steps necessary to have complied with that condition. Upon the facts disclosed it would be inequitable to permit the right to elect the whole debt due and thereby advance the due date 19 years and increase the rate of interest 3 per cent. The stipulation is in the nature of a penalty and although constituting a valid and enforcible contract against which equity will not relieve a delinquent mortgagor in the absence of circumstances showing peculiar hardship, unconscionable advantage or oppression, we are satisfied that the mortga-

gor in this case is entitled to be protected. The trial court erred in granting the relief as prayed for by plaintiff. The plaintiff's petition should have been dismissed at his costs.

Other points are argued by appellant but in view of our holding it is not necessary to lengthen this opinion by reference to them. Wherefore this cause stands—*Reversed.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.