DOROTHY E. AXTELL, appellee, v. WALTER HARBERT, appellant; DONALD E. BUTCHER, intervenor-appellant.

No. 51377.

(Reported in 129 N.W.2d 637)

JULY 16, 1964.

Irish & Skinner, of Altoona, for defendant-appellant and intervenor-appellant.

Bray, McCoy & Faulkner, of Oskaloosa, for appellee.

PETERSON, J.—Plaintiff sued defendant for rent on a certain 40-acre tract in Poweshiek County. However, the important issue in the case is a controversy between plaintiff and her brother Donald, intervenor, as to the ownership of the 40-acre tract. Trial court decided in favor of plaintiff. Intervenor has appealed.

I. Appellant-intervenor raises two alleged errors. 1. That plaintiff failed to establish the essential elements of estoppel. 2. That facts are not present against the intervenor which would constitute waiver.

II. Mr. W. C. Butcher died testate in Poweshiek County December 26, 1940. He was the owner at his death of a 320-acre improved farm. In the vicinity of this farm was a 40-acre tract which was owned by his wife Elizabeth Butcher. Mr. Butcher left the use of the 320-acre farm to his widow for life, with the remainder over in equal shares to his two children, Dorothy E. Axtell, plaintiff, and Donald, intervenor. Donald was the principal of a school at Redfield.

In the fall of 1949 his mother approached Donald relative to buying the 320-acre farm. She had previously discussed the matter with her daughter Dorothy. After some negotiation it was decided that deed would be executed to the farm by the mother and daughter. In consideration of Dorothy's one-half interest her brother Donald, intervenor, would execute and deliver to her a note for $18,000 at 4 percent interest, to be paid on or before March 1, 1970. Intervenor has already paid $11,500 and interest to date on the note. The transaction was consummated between the mother, daughter and son. However, Mr. C. W. Axtell, the husband of plaintiff, refused to sign the deed. Donald received the deed and took possession of the

320-acre farm. He rented the 40 acres from his mother and farmed the 360-acre tract as one unit.

On February 18, 1961, Elizabeth Butcher died testate. One item in the will of Mrs. Butcher provided:

" 'I now own the following described real estate situated in Poweshiek County, Iowa, to wit:

" 'The Northeast Quarter of the Southwest Quarter, Section 10, Township 78 N, Range 13, West of the 5th P.M. [The 40-acre tract in question.]

" 'It is my Will, and I do hereby give, devise and bequeath said 40-acre tract to my daughter, Dorothy E. Axtell, upon the condition, however, that the husband of Dorothy E. Axtell, Charles W. Axtell, will execute a Quit Claim Deed to Donald E. Butcher, on the real estate conveyed to the said Donald E. Butcher by Dorothy E. Axtell, and in the event the said Charles W. Axtell does not execute said Quit Claim Deed to the said Donald E. Butcher, then and in that event, I do hereby give, devise and bequeath said 40-acre tract to my son Donald E. Butcher'."

After the death of his mother Donald was appointed executor of her estate.

Donald and Dorothy met, shortly after the death of Mrs. Butcher, at the office of Mr. Eichhorn, an attorney. He read Mrs. Butcher's will to them and they retained him as the attorney in the estate. In Mrs. Axtell's testimony she states she told her brother on that occasion she would ask her husband to sign the deed.

Donald also testified he told his sister some months later "if she'd get the deed signed we could proceed and close the estate up, and she said she would."

Mr. Donald Butcher had Mr. Eichhorn prepare a quitclaim deed and mail it to Mr. Paul Light, a banker at Deep River. Mr. Light notified Mr. Axtell it was there for his signature. Donald told his sister Dorothy the deed had been prepared and sent to the bank. She said that was fine.

Shortly after Mrs. Butcher's will was filed for probate in February 1961, and after plaintiff told intervenor she would get the signature of her husband on the deed, Donald told Dorothy

to go ahead and take possession of the 40-acre tract of land. The land had been farmed by defendant Walter Harbert for some years, as a tenant of Donald, and plaintiff immediately contacted him to go ahead and farm the 40-acre tract for the year 1961. He placed part of it in corn and part in beans. At the end of the year he harvested the corn and the beans. Mrs. Axtell told him to sell the beans and bring her the proceeds of her one half. He brought the check to her in the amount of $262.32. In the meantime plaintiff and her husband had erected a 1750-bushel corncrib at an expense of $1000 on the 40-acre tract. She had defendant place her one-half share of the corn in the corncrib and she sealed it. The record does not disclose the exact amount she received from such sealing.

The matter ran along through 1961, and early in 1962 Donald talked with his sister Dorothy again about the closing of the estate because the statutory probate period had expired. He filed his final report and gave notice to Dorothy as to hearing. She did not appear nor file any objection. There was distributed to her one half of the net cash receipts in the estate, amounting to $223.02.

Mr. Axtell, husband of plaintiff, never called at the bank to sign the quitclaim deed which had been left there for his signature. On April 11, 1962, plaintiff started an equity action in the District Court of Poweshiek County against her brother Donald to set aside the deed she had signed on the 320-acre farm. Answer was duly filed by defendant. Before the case came to trial and on September 20, 1962, plaintiff filed a dismissal of the case.

After the case was started by plaintiff against her brother Donald to cancel the deed on the 320-acre farm in 1962, Donald notified Mr. Harbert, who had been farming the 40-acre tract in 1962, not to deliver any of the corn raised on the farm in that year to plaintiff. Mr. Harbert heeded Donald's notice and delivered the corn to the 320 acres owned by Donald.

On December 4, 1962, plaintiff filed an action in the office of the Clerk of the District Court of Poweshiek County against Walter Harbert praying that the ownership of said 40-acre tract be established in her and since defendant had failed to

deliver the 1962 one half of corn to her that she have judgment for same.

On December 11, 1962, Donald E. Butcher, her brother, filed a petition of intervention in the case praying that the ownership of the 40-acre tract of land be established in him, and that the landlord's share of corn grown on the 40 acres in 1962 be declared as his corn. Motions, answers and replies were filed in due course and after the case became at issue same was transferred under order of court to equity and was duly tried in the Poweshiek County District Court in September of 1963.

On October 7, 1963, the trial court filed findings of fact, conclusions of law, decree and judgment entry. The court entered judgment against defendant Walter Harbert in the amount of $1355.50, together with interest from November 14, 1962, and costs. The court also decided that plaintiff Dorothy E. Axtell was the absolute owner of the "NW ¼ of the SW ¼ of Section 10, Township 78, Range 13, West of the 5th P.M." It is from this decree and judgment intervenor has appealed.

On September 12, 1963, Mr. C. W. Axtell, the husband of plaintiff, filed a notice and affidavit in the office of the County Recorder of Poweshiek County stating that he was the husband of Dorothy E. Butcher Axtell, the daughter of W. C. Butcher, deceased, and stating that Mrs. Axtell had conveyed her interest in the 320-acre farm to intervenor, her brother, on November 10, 1949, and stating that affiant, C. W. Axtell, her husband, had never conveyed or joined in any conveyance of the real estate described in said deed and that he was filing a notice and affidavit in connection with his interest in accordance with the provisions of section 614.15, Code of Iowa, 1962.

By reason of the closing of the Elizabeth Butcher estate, under which said 40-acre tract was left to intervenor under certain conditions, and by reason of the filing of said affidavit by C. W. Axtell, evidence was placed of record showing complete refusal on his part to execute quitclaim deed to intervenor as to the 320-acre farm.

III. Appellant contends the facts in case at bar do not constitute estoppel. He contends the facts do not measure up to the elements established in many decisions as to estoppel. In

both Corpus Juris Secundum and in numerous cases of this court, four essential elements of estoppel are specifically listed:

A. False representation or concealment of material facts.

B. Lack of knowledge of the true facts on the part of the person to whom the misrepresentation or concealment is made.

C. Intent of the party making the representation that the party to whom it is made shall rely thereon.

D. Reliance on such fraudulent statement or concealment by the party to whom made resulting in his prejudice.

31 C. J. S., Estoppel, section 61; McIntosh v. McIntosh, 211 Iowa 750, 234 N.W. 234; Stookesberry v. Burgher, 220 Iowa 916, 262 N.W. 820; Goodwin Tile and Brick Co. v. De-Vries, 234 Iowa 566, 13 N.W.2d 310, 155 A. L. R. 346; In re Estate of MacVicar, 251 Iowa 1139, 104 N.W.2d 594; Kaltoft v. Nielsen, 252 Iowa 249, 106 N.W.2d 597.

The Stookesberry case is a leading case in the field and states at page 921 of 220 Iowa: "In order to constitute equitable estoppel, or estoppel in pais, false representation or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; that representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice and injury. There can be no estoppel in any event, if any of these elements are lacking."

While pertinent in some respects, such definition is not completely analogous to the instant case. The facts of this case are somewhat in a class by themselves. We fail to find any decision in Iowa where the facts are exactly analogous. It appears clearly, however, the elements above outlined are not present in the case at bar.

At the expense of slight repetition as to some facts we will emphasize the testimony as to the exceedingly material issue of Mr. Axtell not signing the quitclaim deed in favor of intervenor.

Plaintiff testified as to the question of the signing of the deed:

"I have been aware all this time of paragraph 3 of my mother's will. I heard it read the day after my mother's funeral.

The will was read at Mr. Eichhorn's office here in Montezuma. My brother and I and Mr. Eichhorn were present.

"Q. Well, you knew that there was only one condition preventing you from getting the 40 acres? A. I did not know of any condition, Mr. Irish, until I heard it, my brother told me before we went up to read the will. I heard it read again in Mr. Eichhorn's office.

"Q. Now, did you ever make any attempt to get your husband to sign this quitclaim deed? A. No.

"Q. You never asked him to? A. I said I would ask him, but I never did.

"Q. Now, you testified in the spring of 1961 Don told you that he was turning this 40 acres over to you, is that correct? A. It was later than that. It was in the summer.

"Q. All right now, that was after you had told Don you would ask Pete to sign the deed? A. Considerable time.

"Q. And at the time Don told you that he was turning the farm over to you, you hadn't told him that Pete wouldn't sign that deed had you? A. No, because I had not asked him."

The testimony of Donald was more in detail, more articulate and more convincing. He testified:

"Q. What was the conversation in substance so near as you can remember it, what was said by whom and so forth? A. She mentioned that she thought that her husband would sign the deed if she asked him, and that she would ask him.

"I told her that it was possible * * * if she'd get the deed signed we could proceed and close the estate up and she said she would. * * * I told her that because she was going to have her husband sign the deed, that we could go ahead and treat the 40 acres as if it were hers.

"Q. Well, you knew that he put in the crop in the spring of 62? A. As far as I know that as my sister and I had discussed it, that she was intending to have Pete sign the deed, that Pete was going to sign the deed and I had no reason to disbelieve her. * * *

"Q. Didn't you testify that you told her that you would turn this farm over to her? A. No, sir. I stated upon the stipulation we treat it as hers because she said Pete would sign."

874

On the basis of the above facts, intervenor was not estopped as to ownership of the 40 acres. It appears clearly the only basis on which he told plaintiff to go ahead and farm the 40 acres was that she had promised him she would get her husband (commonly known as Pete) to sign the deed.

The will of her mother with reference to that point is crystal clear. Her mother stated: " 'In the event the said Charles W. Axtell does not execute said Quit Claim Deed to the said Donald E. Butcher, then and in that event, I do hereby give, devise and bequeath said 40-acre tract to my son Donald E. Butcher'."

█ IV. Waiver is usually defined as the voluntary relinquishment of a known right. To be effectual a waiver must not only be made intentionally, but with knowledge of the circumstances. 31 C. J. S., Estoppel, section 61, page 388; Lamb v. City of Boone, 237 Iowa 273, 21 N.W.2d 462, 162 A. L. R. 1465; Kaltloft v. Nielsen, supra.

██ In some respects waiver and estoppel are close akin. 31 C. J. S., Estoppel, section 61, page 385, states: "The ground of distinction between the doctrines of waiver and estoppel most frequently adverted to is that waiver rests on intention of the party while estoppel rests on a detrimental change of position induced by his acts or conduct. The distinction is close in cases of implied waiver and the terms are frequently used as interchangeable."

Specifically the situation in the case at bar is whether intervenor waived his ownership of the 40 acres when he told his sister to take possession of the farm in 1961. He did not waive his ownership rights because the statement to her to take possession was based on her agreement to ask her husband to sign the deed to the 320 acres to intervenor. She never got him to sign it; in fact she never asked him.

Most of the references we have heretofore made as to estoppel pertain with equal force to the theory of waiver.

V. The decree and judgment of the trial court is reversed, with instructions to file decree in accordance with this decision. The judgment rendered in favor of plaintiff as against defendant is hereby canceled and held for naught.

The trial court shall also render an accounting as between plaintiff and intervenor. Unless the parties can stipulate as to the amounts pertaining to such accounting, the trial court shall take such evidence as necessary to consummate the accounting.

The costs in this action in both this court and the district court shall be assessed against plaintiff, and judgment rendered accordingly.—Reversed.

All JUSTICES concur except HAYS, J., not sitting.