COMMUNITY SCHOOL DISTRICT OF POSTVILLE, IN the COUNTIES OF ALLAMAKEE, et al., State of Iowa, Plaintiff-Appellant,

v.

GORDON N. PETERSON, INC., Defendant-Appellee.

GORDON N. PETERSON, INC., Third-Party Plaintiff-Appellee,

v.

Russell L. RAFOTH, d/b/a Rafoth Furnace & Sheet Metal Works, Third-Party Defendant-Appellee.

Russell L. RAFOTH, d/b/a Rafoth Furnace & Sheet Metal Works, Fourth-Party Plaintiff-Appellee,

v.

The FLINTKOTE COMPANY and Toenjes and Stenson, a Partnership, composed of David S. Toenjes and Marvin L. Stenson, Partners, and against David S. Toenjes and Marvin L. Stenson, as Individuals, Fourth-Party Defendants-Appellees.

TOENJES AND STENSON, a Partnership, Fourth-Party Cross-Petitioner-Appellee,

v.

The FLINTKOTE COMPANY, Defendant to the Fourth-Party Cross-Petition-Appellee.

TOENJES AND STENSON, a Partnership composed of David S. Toenjes and Marvin L. Stenson, Partners, and David S. Toenjes and Marvin L. Stenson, as Individuals, Fifth-Party Plaintiffs-Appellees,

v.

The DOW CHEMICAL COMPANY, a Corporation, Fifth-Party Defendant-Appellee.

No. 53819.

Supreme Court of Iowa.

April 7, 1970.

Arthur H. Jacobson, of Jacobson, Bristol & Thomson, Waukon, and Joseph B. Steele, Postville, for plaintiff-appellant.

Reynolds, Kenline, Roedell, Breitbach & McCarthy, Dubuque, for Gordon N. Peterson, Inc., defendant and third-party plaintiff-appellee.

E. Marshall Thomas, of O'Connor, Thomas, Wright, Hammer & Bertsch, Dubuque, for Russell L. Rafoth, d/b/a Rafoth Furnace & Sheet Metal Works, third-party defendant and fourth-party plaintiff-appellee.

Austin, Grefe & Sidney, Des Moines, for Flintkote Co., fourth-party defendant and defendant to fourth-party cross-petition-appellee.

Swisher & Cohrt, Waterloo, for Toenjes and Stenson, a partnership, and Marvin L. Stenson and David S. Toenjes, individually, fourth-party defendants and fourth-party cross-petitioner and fifth-party plaintiffs-appellees.

Beecher, Buckmaster, Beecher, Holmes & Lindeman, Waterloo, for Dow Chemical Co., a corporation, fifth-party defendant-appellee.

BECKER, Justice.

Plaintiff school district brought this action for damages against Gordon N. Peterson, Inc., hereinafter called Peterson, alleging breach of both express and implied warranties arising from a contract for construction of a new high school building by defendant. Plaintiff alleged that the roof on said building was defective in several respects, that a new roof must be installed, and that as a result plaintiff district had been damaged in the amount of $29,000. A series of third party petitions and cross-petitions brought in the other parties. An application for adjudication of law points was determined adversely to plaintiff resulting in dismissal of plaintiff's claim and effectively disposing of all third party claims. Plaintiff appeals. We reverse and remand for trial.

Defendant Peterson filed a third party petition against Russell L. Rafoth, d/b/a

Rafoth Furnace & Sheet Metal Works, hereinafter called Rafoth, the subcontractor who furnished the materials and performed the work necessary to install the roof in question, asking complete indemnity in case he should be liable to plaintiff school district.

Rafoth in turn filed a fourth party petition against The Flintkote Company, hereinafter called Flintkote, alleging that if the roof failed as alleged in plaintiff's petition, such failure was caused by the negligence of Flintkote in manufacturing and distributing defective materials and in other respects. He also filed a fourth party petition against Toenjes and Stenson, a partnership company of David S. Toenjes and Marvin L. Stenson, and against them as individuals, alleging certain specific acts of negligence on their part. Rafoth prayed, in the event a judgment is obtained in this action in favor of the school district and against Peterson, and in the further event that Peterson obtains a judgment against Rafoth, that he (Rafoth) be granted a judgment over against Flintkote and against Toenjes and Stenson, individually and as a partnership, for any amount which Rafoth is compelled to pay on account of or arising out of this action.

Thereafter, Toenjes and Stenson filed their fifth party petition against The Dow Chemical Company, a corporation, alleging that if the roof in question failed as alleged in plaintiff's petition, the proximate cause of such failure was the negligence of Dow in misrepresenting and in making false warranties regarding its products used in the construction of the roof. Fifth party plaintiffs pray for judgment over against Dow.

By an amendment to his answer, third party defendant Rafoth alleged as an affirmative defense that on or about June 7, 1966, which was several months after commencement of this action, The Flintkote Company paid the sum of $5,640.00 to plaintiff school district and that plaintiff executed a release to Flintkote which fully

released and discharged Rafoth. A copy of such release is attached to this amendment. By its terms it expressly releases The Flintkote Company and Peerless Insurance Company.

Thereafter, the defendant Peterson and the other cross-petition defendants amended their respective answers to allege the giving of this release, which they maintain by operation of law released them from further liability to the plaintiff.

In its reply to the amendment to answer, plaintiff sets forth three contentions as follows:

1. That the instrument executed by it to Flintkote constitutes a covenant not to sue.

2. That the payment received by plaintiff does not constitute a full satisfaction of the claims and causes of action pleaded by plaintiff in its petition, was not intended by plaintiff and Flintkote to be a satisfaction thereof, and was not accepted by plaintiff in full satisfaction thereof.

3. That defendant Peterson is estopped from maintaining that the receipt of such $5,640.00 from Flintkote and the delivery of the release, or purported release, released and discharged defendant Peterson from the claims made by plaintiff.

On October 7, 1968, the defendant and all cross-petition defendants filed herein an application for adjudication of law points wherein they joined in asking the court to determine whether the payment by Flintkote to plaintiff of the sum of $5,640.00 and the release executed by plaintiff had the effect of releasing defendant Peterson from the alleged damages to plaintiff's building prayed for in its petition.

After hearing, the trial court held the document entitled "Release" executed by plaintiff to The Flintkote Company and Peerless Insurance Company was not ambiguous, constituted full satisfaction to Flintkote and bondsman by its language, constituted a full and complete release and satisfaction of plaintiff's claim for damages, and by operation of law released all other associate alleged wrongdoers, including the defendant Peterson. We disagree.

I. We view plaintiff's second assignment of error as determinative of this appeal; i.e., the assertion the release in question does not constitute a full satisfaction, was not so intended and was not accepted as such. The trial court properly followed the rule recognized in Dungy v. Benda, 251 Iowa 627, 636, 637, 102 N.W.2d 170, 176:

"Basically, we think, much of the confusion arises from failure to realize that in considering the effect of a full release to one against whom the claim is made, the governing principle is that if the claim is satisfied as to the release *it is thereby satisfied by operation of law* against all others who may be or may be claimed to be liable for the same injury. *It is then not competent to inquire as to the intent to release such other possible parties, because the law says they are released.* Admitting the release and discharge of the one to whom the release runs, the claimant has admitted satisfaction of his claim, and there can be only one satisfaction. Such is the situation here." (Emphasis supplied.)

The above rule imports satisfaction as a matter of law. The true intent of the instrument is held to be immaterial. We are now required to reexamine the rule in light of our holdings in more recent cases. Such reexamination convinces us the holding in Dungy v. Benda, supra, should be overruled.

The central issue is whether we will treat releases as we do other contracts and seek to determine the intent of the contracting parties. The alternative accepted in Dungy v. Benda, supra, is to give a release a fixed legal meaning which excludes inquiry into the true intent of the contracting parties. We have recently reexamined our approach to interpretation of contracts and have clarified the proper limits to the parol evidence

rule in Hamilton v. Wosepka, Iowa, 154 N.W.2d 164:

"Extrinsic evidence that throws light on the situation of the parties, the antecedent negotiations, the attendant circumstances and the objects they were thereby striving to attain is necessarily to be regarded as relevant to ascertain the actual significance and proper legal meaning of the agreement.

"Professor Corbin in the preface to Volume 3 of his work on contracts says:

" 'The purpose of interpretation as justice requires is always the discovery of actual intention:—the intentions of both parties if they are the same,—the actual intention of one party if the other knew or had reason to know what it was,—but absolutely never to give effect to the meaning of words that neither party in fact gave them, however many other people might have given them that meaning.'" (Loc. cit. 154 N.W.2d at page 168.)

Hamilton v. Wosepka, supra, examines our Iowa cases and numerous outside authorities in depth. It does not change the basic rules recognized by this court in addressing itself to the task of interpreting a written agreement but rather seeks to clarify rules of interpretation which, through the years, had reached the point of being contradictory.

"Professor Richard S. Hudson has collected, analyzed and criticized our own cases dealing with the problem since 1931 in articles appearing in 10 Drake L.Rev. 87 (1961) supplemented in 13 Drake L.Rev. 131, 151 (1964) and again in 15 Drake L.Rev. 61, 90 (1966). He suggests in his first article at page 89 that a 'reconciliation of Iowa cases during the period under surveillance is not deemed to be worth while, or even possible.'" (Loc. cit. 154 N.W.2d at page 171.)

The rules laid down in Hamilton v. Wosepka, supra, presuppose a knowledge of our Rules of Civil Procedure, No. 344(f) (14):

"In the construction of written contracts, the cardinal principle is that the intent of the parties must control; and except in cases of ambiguity, this is determined by what the contract itself says."

Hamilton v. Wosepka then points out that *since the intent of the contracting parties is paramount,* extrinsic evidence is admissible not to vary or contradict the terms of a written instrument but to aid in interpreting it.

" ' * * * the "parol evidence rule" purports to exclude testimony "only when it is offered for the purpose of 'varying or contradicting' the terms of an 'integrated' contract; it does not purport to exclude evidence offered for the purpose of interpreting and giving a meaning to those terms. * * *." ' " (Loc. cit. 154 N.W.2d at page 170.)

The principles recognized in Hamilton v. Wosepka, supra, apply to releases which are a specific type of contract. Atlantic Northern Airlines v. Schwimmer, 12 N.J. 293, 96 A.2d 652, one of the principle cases relied upon deals with interpretation of a release as a contract.

Defendants correctly argue that Pedersen v. Bring, 254 Iowa 288, 117 N.E.2d 509, approves the rule laid down in Dungy v. Benda, supra. It should be noted that while Pedersen v Bring, supra, approves what is said in Dungy v. Benda, the intent of the contracting parties was held to be a relevant fact question because the contract was said to be ambiguous. The ambiguity-on-its-face doctrine was later rejected in Hamilton v. Wosepka, supra.

We do not agree that Johnson v. Harnisch, 259 Iowa 1090, 147 N.W.2d 11, and Smith v. Conn, (Iowa) 163 N.W.2d 407 approved the principles recognized in Dungy v. Benda. On the contrary, both cases were carefully distinguished and in the former case the question of the distinction between release and satisfaction was specifically reserved. Both cases were factually different. It was unnecessary to overrule Dungy to come to the result reached. Both cases approved principles at odds with Dungy v.

Benda, emphasized the need to inquire into the intent of the contracting parties and approved admission of extrinsic evidence to aid in interpretation of the contracts. Because we find it necessary to overrule Dungy v. Benda, supra, we should review some of the authorities recognized in Johnson v. Harnisch, supra.

We first noted and discussed Bolton v. Ziegler, (Iowa, Dist.Ct.), 111 F.Supp. 516, which reviews the earlier Iowa cases at length. Judge Graven concluded: " '* * * But it seems clear that if the Iowa Supreme Court applies the maxim "a release of one joint tort-feasor releases all" at all, it does so only after it has been determined that the injured person has received full satisfaction for his injury. * * *.' " (Loc. cit. 147 N.W.2d at page 16.)[1]

The federal court then recognized the right to introduce extrinsic evidence as an aid to interpretation: "* * * As to the applicability of the parol evidence rule in regard to the matter of satisfaction, see Middaugh v. Des Moines Ice and Cold Storage Co., supra at page 400 of 169 N.W.; Ryan v. Becker, supra at page 428 of 111 N.W.; Bell v. Perry & Townsend, supra at page 372 of 43 Iowa. * * *." (Loc. cit. 111 F.Supp. at page 526.)

We note Middaugh v. Des Moines Ice & Cold Storage Co., 184 Iowa 969, 984, 169 N.W. 395, 400 is distinguished and Ryan v. Becker, 136 Iowa 273, 111 N.W. 426, 14 L.R.A., N.S., 329 is specifically overruled by Dungy v. Benda, supra. However, these cases are consistent with what was later said in Hamilton v. Wosepka, supra, and are consistent with the rule now adopted.

We also quoted from Gronquist v. Olson, 242 Minn. 119, 64 N.W.2d 159: " * * * 'We believe that the factors determinative of whether a release of one of several joint

tort-feasors will operate to release the remaining wrongdoers should be and are: (1) The intention of the parties to the release instrument, and (2) whether or not the injured party has in fact received full compensation for his injury. If we apply that rule, then, where one joint tort-feasor is released, *regardless of what form that release may take,* as long as it does not constitute an accord and satisfaction or an unqualified or absolute release, and there is no manifestation of any intention to the contrary in the agreement, the injured party should not be denied his right to pursue the remaining wrongdoers until he has received full satisfaction.' " (Loc. cit. 147 N.W.2d at page 16.)

We then noted the following from annotation at 73 A.L.R.2d 403, 425: " '* * * § 11 Intention rule; illustrative cases. The modern view repudiates the common-law rule under which the release of one tort-feasor automatically discharges the liability of the others, and makes the intention of the parties to the release the test of whether it effects the release of other tortfeasors who are not parties thereto.' " (Loc. cit. 147 N.W.2d at pages 16, 17.)

Finally, we noted but did not quote from, "McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1253 (opinion by Mr. Justice Rutledge, then Associate Justice of the United States Court of Appeals for the District of Columbia), Breen v. Peck, 28 N.J. 351, 146 A.2d 665, 73 A.L.R.2d 390, and the wealth of authorities cited therein and in the accompanying A.L.R. annotations." (Loc. cit. 147 N.W.2d at page 17.)

All the foregoing authorities reject the automatic release of all obligors when one receives a release. We think our action in overruling Dungy v. Benda, supra, is of sufficient importance to justify quotation from the following authorities.

---

[1]. In many of the quotations used herein the terminology used refers to tort-feasors. The broader term obligors is more accurate. The principles apply whether the actions sound in tort or contract and also whether the torts are joint or several. Cf. 4 Corbin, Contracts, §§ 931 et seq., where the term obligors is used throughout.

Harper and James, The Law of Torts, section 10.1, pp. 711–712: "* * * Properly speaking, a clear distinction should be made between a satisfaction and a release, since the existence of the latter doesnot necessarily indicate that the plaintiff has received full compensation for his injury, i. e., satisfaction. * * *

"It is submitted that these factors, whether the plaintiff has been fully compensated and whether the parties intended the result of their negotiations to be a complete freedom from further liability for all the tort-feasors, should be paramount in determining the effect of any agreement purported to operate as a release and should be inquired into whenever the problem arises in a case."

Prosser, Law of Torts, Third Ed., § 46, pages 268–273: "The American courts, possibly because of the diminished effect given to the seal, have rather hopelessly confused release with satisfaction. * * *

"The only desirable rule would seem to be that a plaintiff should never be compelled to surrender his cause of action against any wrongdoer unless he has intentionally done so, or unless he has received such full compensation that he is no longer entitled to maintain it. If the statutes are taken into account, this is now the rule actually applied in some two-thirds of the American jurisdictions. Where there has been such full satisfaction, or where it is agreed that the amount paid under the release is so received no claim should remain as to any other tortfeasor; but these are questions of fact, and normally to be determined by the jury, where the amount of the claim is unliquidated. * * *."

Prosser's footnote 24 states in part: "See the excellent opinion of Rutledge, J., in McKenna v. Austin, 1943, 77 App.D.C. 228, 134 F.2d 659, 148 A.L.R. 1253, which seems to leave nothing more to be said. Also, Black v. Martin, 1930, 88 Mont. 256, 292 P. 577; Gronquist v. Olson, 1954, 242 Minn. 119, 64 N.W.2d 159. * * *."

4 Corbin on Contracts, section 934, pp. 757–765 is harsher in its condemnation of the rule followed in Dungy v. Benda, supra. Rather than quote extensively we note the New Jersey court's summary in Breen v. Peck, 28 N.J. 351, 146 A.2d 665, 73 A.L.R.2d 390, 397: "* * * Corbin, supra, § 934 persuasively supports the position that the parol evidence rule does not preclude oral evidence that the parties to the release did not intend to discharge strangers thereto; he points out that the writing purports to be nothing but a release of the named releasee and does not purport to integrate matters affecting third parties; and he stresses that the oral understanding does not contradict or vary the written document but on the contrary is quite consistent with it. * * *."

We also note the Minnesota Supreme Court's acknowledgment of Corbin's thesis in Couillard v. Charles T. Miller Hospital, Inc., 253 Minn. 418, 92 N.W.2d 96, 102, 103: "Nor do we believe there is sufficient reason for holding, as we did in Smith v. Mann, [184 Minn. 485, 239 N.W. 223], supra, that parol evidence is not admissible to show the true nature and extent of the release, particularly in light of the fact that the subsequent joint tortfeasors in this instance, who might claim the protection of the rule, are neither parties to the release nor are they named in it. 'The refusal to let such third parties hide behind the parol evidence rule, when the documentary "release" was not in fact intended to discharge claims against them and does not on its fact purport to express such an intention, is a thoroughly justified refusal. Testimony that is offered for this purpose should never be excluded whoever may be the parties to the suit in which it is offered.' 4 Corbin, Contracts, § 934, p. 760."

It is doubtful that any rule can now be termed a "majority rule." Prosser notes that: 19 states have changed the rule by statute, 13 jurisdictions have recognized reservations of rights in releases, and at least six states have recognized extrinsic

evidence to reach the true intent of the contracting parties. Prosser, Law of Torts, Third Ed., § 46, pp. 271–272. The number of jurisdictions recognizing one rule or the other should not be determinative. The reasons for the rule, or the change, are more important. These reasons were most strongly articulated by Justice Rutledge in McKenna v. Austin, 1943, 77 App.D.C. 228, 134 F.2d 659, 662, 148 A.L.R. 1253:

"The rule's results are incongruous. More often than otherwise they are unjust and unintended. Wrongdoers who do not make or share in making reparations are discharged, while one willing to right the wrong and no more guilty bears the whole loss. Compromise is stifled, first, by inviting all to wait for the others to settle and second, because claimants cannot accept less than full indemnity from one when doing that discharges all. Many, not knowing this, accept less only to find later they have walked into a trap. The rule shortchanges the claimant or overcharges the person who settles, as the recurring volume and pattern of litigation show. Finally, it is anomalous in legal theory, giving tortfeasors an advantage wholly inconsistent with the nature of their liability."

 We therefore conclude a release of an obligor does not automatically release all others who are or may be liable. In the event the obligation is liquidated, payment of the full amount would, of course, constitute complete satisfaction and would bar further action for we have long held no double recovery will be tolerated. If the debt is unliquidated the intention of the parties to the release controls. This intent must be determined by the terms of the contract aided by such extrinsic evidence as may be properly offered to aid in the task of interpretation. The burden of proof on the issue is on the party who relies upon the affirmative of the issue. Rule 344(f)(5), R.C.P.

We should note the liability alleged against Peterson is in part at least for Peterson's direct action. Where the co-obligor is liable vicariously (that is, as principal for the acts of his agent), additional problems are raised when a release or covenant not to sue is given to the agent or other source of liability insofar as vicarious liability is concerned. We do not resolve these problems in this opinion. Cf. Annotations, 20 A.L.R.2d 1044; 92 A.L.R. 2d 533 and IV Corbin on Contracts, §§ 933 et seq.

As we view this case the foregoing disposition of plaintiff's error number 2 dispenses with any necessity to consider errors number 1 and 3. We would find it difficult to treat the instrument as a covenant not to sue but where the true intent is open to explanation the point is moot. As to estoppel, the estoppel is asserted against a principle that has now been overruled.

Reversed and remanded.

All Justices concur, except LARSON, J., MOORE, C. J., and LeGRAND, J., who concur specially.

UHLENHOPP, J., takes no part.

LARSON, Justice (concurring specially).

I concur in the result reached in the majority opinion filed herein, but cannot agree that it is necessary or desirable at this time to change the well-established rule announced and followed by this court in Dungy v. Benda, 251 Iowa 627, 102 N.W. 2d 170. That relatively-recent decision was recognized and approved by a unanimous court in Petersen v. Bring, 254 Iowa 288, 117 N.W.2d 509, and, although considered in Johnson v. Harnisch, 259 Iowa 1090, 147 N.W.2d 11, it was specifically not overruled. I find it unnecessary to do so here and, although I may favor some modification of that rule when the occasion of necessity arises, I prefer to place this decision upon plaintiff's third contention, "That defendant Peterson is estopped from maintaining that the receipt of such $5,640.00 from Flintkote and the delivery of the release, or

purported release, released and discharged defendant Peterson from the claims made by plaintiff." If I understand the rule adopted by the majority here, which has only the full support of six jurisdictions and some legal publications, when a claim is unliquidated, extrinsic evidence may be received to determine the intent of the parties no matter how clear or unambiguous or well-settled the legal terms are that are used in the written release. This means no agreement of release or settlement of an unliquidated claim can be relied upon as concluding the matter involved, and all such settlements will be subject to factual review and determination thereafter. I am not willing to go so far at this time.

I. It would be difficult indeed to draw a document which more clearly expresses an intent to release and satisfy a liquidated or unliquidated claim than the one executed herein. The document entitled "Release" which plaintiff concedes it executed and delivered to Flintkote and the Peerless Insurance Company was as follows:

"In consideration of Five Thousand Six Hundred and Forty Dollars ($5,640.00) to be paid to the POSTVILLE COMMUNITY SCHOOL DISTRICT, Postville, Iowa (hereinafter referred to as Postville), by THE FLINTKOTE COMPANY, and in consideration of the return to The Flintkote Company of Guaranty Bond No. 20–03–A–1452; said Postville on behalf of itself, successors and assigns, does hereby release and forever discharge the Flintkote Company and Peerless Insurance Company, Keene, New Hampshire; and each of their respective successors and assigns, from any and all demands, claims, damages or suits of any kind to persons and/or property which have resulted or may result directly or indirectly from the sale and application of Flintkote products on the roof of the high school building of said Postville, and which is the subject of Guaranty Bond No. 20–03–A–1452, which Bond shall be considered null and void."

It was recognized in Dungy v. Benda, supra, that our rather technical rule might result in some hardships and unsatisfactory results, but we concluded that, unless such a rule was adopted, few if any full releases, no matter how clearly written, could be relied upon. In any event, it was pointed out that if anything but full satisfaction was contemplated, the instrument should say so, and it recognized that a covenant not to sue or the use of a qualified release was available to avoid the release of other involved wrongdoers. It was then believed that such a well-established rule was desirable. Except as to a modification of the rule extending the release to parties not named therein, I feel the majority pronouncement would not settle, but unsettle and make uncertain, all releases executed hereafter. I would avoid that issue here.

I find in the case at bar no ambiguity in the release, and am convinced the language used in it leaves no doubt that Flintkote and its bondsman are fully released, and that as to them full satisfaction had been acknowledged upon the payment by them of the sum of $5,640.00. However, I find the plaintiff has alleged sufficient ultimate facts to establish its contention that Peterson and Rafoth are estopped from setting up the release to Flintkote as a defense to their actions and that the trial court erred in dismissing plaintiff's petition pursuant to the hearing under Rule 105, R.C.P.

II. In its reply to defendant's affirmative defense of full release by operation of law plaintiff alleged the facts which it contends plead a good cause of action for estoppel. Under this pleading appellant argues that it was entitled to introduce evidence as to the claimed agreement between it and the defendants Peterson and Rafoth which preceded the settlement and release of Flintkote, and that the trial court erred in ruling on that factual issue in a proceeding to determine law points. I am inclined to agree.

In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one

to speak against his own acts, representations, or commitments, to the injury of one to whom they were directed and who reasonably relied thereon. Such a doctrine is neither odious nor in disfavor in law or equity. Smith v. Coutant, 232 Iowa 887, 891, 6 N.W.2d 421, 424, and citations; 28 Am.Jur.2d, Estoppel and Waiver, § 28, p. 629.

To raise the issue of estoppel, it is essential that the ultimate facts upon which that claim arises must appear on the face of the pleadings. Farmers & Mechanics Sav. Bank v. Campbell, 258 Iowa 1238, 1247, 141 N.W.2d 917, 922; Halvorson v. City of Decorah, 258 Iowa 314, 138 N.W.2d 856; Paveglio v. Firestone Tire and Rubber Co., Iowa, 167 N.W.2d 636, 638.

We have said, in order to constitute equitable estoppel or estoppel in pais, false representation or concealment of material facts must exist, that the party to whom the representation or concealment was made must have been without knowledge of such facts, that such representation or concealment must have been made with the intention that it should be acted upon, and that the party to whom it was made must have relied thereon to his prejudice and injury. We have also said, if any of these elements are clearly lacking, there can be no estoppel. Axtell v. Harbert, 256 Iowa 867, 872, 129 N.W.2d 637, 639, cited with approval in Paveglio v. Firestone Tire and Rubber Co., supra.

The four generally-recognized essential elements of estoppel we set out in Axtell and approved in Paveglio at page 638 of 167 N.W.2d as follows:

"A. False representation or concealment of material facts.

"B. Lack of knowledge of the true facts on the part of the person to whom the misrepresentation or concealment is made.

"C. Intent of the party making the representation that the party to whom it is made shall rely thereon.

"D. Reliance on such fraudulent statement or concealment by the party to whom made resulting in his prejudice."

In considering the first element of false representation or concealment of material facts, it "is not necessary that the one sought to be estopped had a fraudulent intent. It is sufficient if a fraudulent result would follow if he be permitted to enforce a claim inconsistent with his previous declarations or conduct." We have classified such a result as a constructive fraud upon the injured person. Hart v. Worthington, 238 Iowa 1205, 1219, 30 N.W.2d 306, 313, and cases cited therein. Also see Wetzstein v. Dehrkoop, 241 Iowa 1237, 1245, 44 N.W. 2d 695, 699, and cases cited therein; Ames Trust and Savings Bank v. Reichardt, 254 Iowa 1272, 1280, 121 N.W.2d 200, 204; Helwig, Admr. v. Fogelsong, 166 Iowa 715, 723, 724, 148 N.W. 990, 994; Blackman v. Carey, 192 Iowa 548, 552, 185 N.W. 87, 89; Hainer v. Iowa Legion of Honor, 78 Iowa 245, 251, 43 N.W. 185, 187; 28 Am.Jur.2d, Estoppel and Waiver, § 43, pp. 650–651.

In Hainer v. Iowa Legion of Honor, supra, we said: "The estoppel is allowed to prevent fraud and injustice, and exists wherever a party cannot, in good conscience, gainsay his acts or assertions. * * where a party, either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterward be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person, or to some one claiming under him."

In Wetzstein v. Dehrkoop, supra, the court reviewed several of our previous cases and reasserted the view that an estoppel is based upon the idea that one who has made certain representations should not thereafter be permitted to alter his evident position to the prejudice of one who has relied and acted thereon.

In Ames Trust and Savings Bank v. Reichardt, supra, the court said: "Equitable estoppel is based on fraudulent conduct or a fraudulent result. One must knowingly

take a position with intention that it be acted upon, * * *" (emphasis supplied) and when it appears the one to whom it is directed relies thereon to his prejudice, equitable estoppel is established.

In Helwig, Admr. v. Fogelsong, supra, it was said: "A party who has taken one position by which he expects to be benefited is estopped from repudiating that and taking another inconsistent position to the prejudice of another."

In Blackman v. Carey, supra, this appears: "Equity will not permit a person to throw another off his guard and through such means obtain an unfair advantage. A person cannot gainsay his own acts and assertions or mislead another to his detriment. If a party to a contract or transaction induces another to act upon the reasonable belief that he will waive certain rights or terms, he will be estopped to insist upon such rights to the injury of him who is misled thereby. * * * Equity requires that a person refrain from enforcing a claim which he has induced another to suppose he would not rely upon."

In 28 Am.Jur.2d, Estoppel and Waiver, supra, in discussing this problem, it states: "In many instances, however, it is necessary to extend the terms 'fraud' or 'fraudulent' to situations which are more accurately described as 'unconscionable' or 'inequitable'. Neither actual fraud nor bad faith is generally considered an essential element. But there must be either actual fraud involving an intent to deceive, or constructive fraud resulting from gross negligence or from admissions, declarations, or conduct intended or calculated, or such as might reasonably be expected, to influence the conduct of the other party, and which have so misled him to his prejudice that it would work a fraud to allow the true state of facts to be proved. * * * The fraud may, and frequently does, consist in the subsequent attempt to controvert the representation and to get rid of its effects, and thus to injure the one who has relied on it. In other words, the doctrine of estoppel in pais is

based upon a fraudulent purpose or a fraudulent result."

Of course, unless the well-pleaded facts are sufficient to estop, a pleading of mere conclusions will not supply the element or elements missing. Halvorson v. City of Decorah, supra; Alexander v. Randall, 257 Iowa 422, 427, 133 N.W.2d 124, 127; Paveglio v. Firestone Tire and Rubber Co., supra, and citations; Townsend v. Armstrong, 220 Iowa 396, 398, 399, 260 N.W. 17, 18.

In the case at bar plaintiff pleaded it was led to believe, and did believe, that defendants Peterson and Rafoth urged and agreed to a settlement with Flintkote which would not amount to a satisfaction of the claim against them, but would be a setoff against any damages later adjudged against them in this action, inferring that they were not concerned with the form of any release necessary to obtain that settlement. It does seem obvious Flintkote and its bondsman would not pay the entire bond penalty without a full release, and a finder of fact could reasonably determine that that was in the minds of the parties when the agreement was made and the settlement consummated.

On the other hand, if it were otherwise and these defendants intended to conceal their purpose to use that settlement and "Release" as a defense to the claim against them either at that time or later, plaintiff states it was not aware of that fact.

From the contentions now made by appellees Peterson and Rafoth it is clear those representations and agreements, whatever they were, were made with the expectation and intention that plaintiff would act thereon, and it is now abundantly clear that plaintiff relied upon those representations and under our prior decisions acted to his prejudice and injury in consummating that settlement, unless the defendants Peterson and Rafoth are estopped from setting up the technical third party release defense.

From the record we learn that on August 24, 1968, defendant Peterson amended his

answer filed herein to allege that on or about June 7, 1966, the plaintiff executed and delivered to Flintkote a release which fully released and discharged defendant Peterson of any and all demands, claims, damages or suits of any kind resulting from the installation of the school building roof.

Thereafter on October 31, 1968, plaintiff amended its pleadings to allege:

That during the period from September 28, 1965 to September 15, 1966 negotiations were conducted between the plaintiff and defendant Peterson and between the plaintiff and Peterson and Rafoth, regarding a possible settlement of plaintiff's claim against defendant Peterson.

That during such period the defendant Peterson and Rafoth requested that the plaintiff should endeavor to collect from Flintkote the amount of such bond and it was agreed among such parties that the amount of such bond should be collected by plaintiff and it was agreed by such persons that the receipt of such amount by plaintiff would not constitute a full satisfaction of plaintiff's claim against defendant Peterson, but would operate to mitigate the damages which plaintiff claimed against Peterson and the amount of indemnity which Peterson in turn might claim against Rafoth.

That the plaintiff relied upon the said agreement with Peterson and did thereafter undertake to collect from Flintkote the amount of such bond and did on or about June 7, 1966 execute an instrument, a copy of which is attached as Exhibit 'A' to defendant's amendment to answer, and a few days later delivered it to The Flintkote Company.

That on or about September 15, 1966 the plaintiff received from The Flintkote Company the sum of $5,640.00.

That the payment received by plaintiff from Flintkote did not constitute a full satisfaction of the claims and causes of action pleaded by plaintiff in its petition against the defendant Peterson, was not intended by the plaintiff and defendant Pe-

terson to be a satisfaction thereof; and the instrument Exhibit 'A' attached to defendant's Amendment to Answer did not release and discharge the defendant Peterson from its liability to plaintiff.

That the defendant Peterson is estopped from maintaining that the receipt of such $5,640.00 from Flintkote and the delivery of such instrument (Exhibit 'A' attached to defendant's Amendment to Answer) released and discharged defendant Peterson from the claims and causes of action made by plaintiff in its petition, and the defendant Peterson is estopped from asserting the defense which it pleads in paragraph (4) of Division I of its Answer.

It is appellees' contention that the ultimate facts alleged above would not support an estoppel plea here because plaintiff failed to state that defendant Peterson agreed, in making settlement with Flintkote, that he could give a full and complete release, that plaintiff's pleading is more significant as to what it does not allege than what it does allege. I think this is a tenuous ground upon which to deny plaintiff a hearing upon the terms of the actual agreement and transaction leading up to and resulting in the release given. I would hold the pleading was sufficient to permit testimony as to the parties' intentions at the time, and generated a question for the fact-finder rather than a law question for the court.

In Halvorson v. City of Decorah, supra, 258 Iowa 314, 319, 138 N.W.2d 856, 860, we considered the matter of doubtful pleadings and said: "If, however, the petition does allege ultimate facts upon which plaintiff might recover and states a claim under which evidence may be introduced in support thereof, or if attack is delayed, the petition should be construed in the light most favorable to the plaintiff with doubts resolved in his favor and the allegations accepted as true", citing Anthes v. Anthes, 255 Iowa 497, 503, 122 N.W.2d 255, 258; Newton v. City of Grundy Center, 246 Iowa 916, 921, 70 N.W.2d 162. No attack was directed at this pleading by motion before

the issues were joined and, while plaintiff's conclusions alone were not sufficient, I am satisfied the alleged ultimate facts and conclusions pleaded were sufficient to establish a fact question as to what plaintiff could or could not do in concluding the settlement with Flintkote. Fair dealing and justice will best be served by a full factual inquiry as to the intentions, understanding, and agreement between the parties leading up to the execution of the "Release."

In view of my conclusion that the trial court erred in dismissing this petition without a hearing to determine the factual issue raised by plaintiff's plea of estoppel, I would reverse and remand the matter for further proceedings as indicated herein.

MOORE, C. J., and LeGRAND, J., join in this special concurrence.